Sylvia A. SLIWA, Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 86–7430.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 1987.

Decided Feb. 12, 1988.

**603**

Paul J. Mooney and Marc L. Spitzer, Phoenix, Ariz., for petitioner-appellant.

Michael L. Paup, Gilbert S. Rothenberg and John A. Dudeck, Jr., Washington, D.C., for respondent-appellee.

Before POOLE and BOOCHEVER, Circuit Judges, and DIMMICK,* District Judge.

POOLE, Circuit Judge:

This case arises out of alleged deficiencies in the 1975, 1976, and 1977 federal income tax paid by appellant Sylvia Sliwa. After Ms. Sliwa filed a petition in the tax court seeking a re-determination of the deficiencies set forth by the Commissioner, the Commissioner of Internal Revenue conceded that Sliwa's return was not in fact deficient, and stipulated to the dismissal of the Notice of Deficiency against her.

Sliwa then applied to the Tax Court for an award of attorney's fees under section 7430 of the Internal Revenue Code, 26 U.S. C. § 7430. Under the statute, a prevailing party may be awarded attorney's fees upon proof that the "position of the United States in the civil proceeding" was unreasonable. The Tax Court, examining the government's conduct only after Sliwa had filed her petition, found the Commissioner's position to have been reasonable and denied fees. Sliwa argues on appeal that the Tax Court should have considered the pre-litigation conduct of the agency in determining the "reasonableness" of the government's position in the civil proceeding, and further that the government's position was unreasonable both before the litigation and after the filing of her Tax Court petition.

We have jurisdiction over the appeal pursuant to 26 U.S.C. § 7482(a) and affirm.

## FACTS AND PROCEEDINGS

During the tax years 1975–1977, while Sylvia and Kenneth Sliwa were married and filed joint income tax returns, Kenneth embezzled money from his employer, Marriott Corporation, to cover accrued gambling debts. None of Kenneth's illegal embezzlement income was reported on the Sliwas' joint returns for 1975, 1976, and 1977.

Sylvia began divorce proceedings against her husband in October 1978, and they ultimately entered into a separation agreement under which Sylvia retained possession of the couple's personal residence in Phoenix. In November 1978, Kenneth executed and recorded a quitclaim deed conveying his interest in the property to his wife.

In 1981, the Commissioner issued a joint Notice of Deficiency against both Sliwas for the tax years 1975, 1976, and 1977, asserting deficiencies arising out of Kenneth's unreported embezzlement income. The Commissioner mailed a notice of deficiency to Kenneth at his new address, but failed to send a notice to Sylvia, who continued to reside at the old Sliwa residence. The Commissioner later conceded that this notice was ineffective as to Sylvia.

Following tax assessments against Kenneth in October and November 1981, the Commissioner filed notice of federal tax liens on the Sliwa residence, based on the position that Kenneth had not effectively conveyed his interest in the residence to Sylvia until February 1982, after federal tax liens had attached to the property. This position was apparently founded on the notary public's failure to sign the verification on Kenneth's 1978 quitclaim deed.

In November 1983, Sylvia met with IRS agent Allene Hartley, at the latter's request, to discuss what knowledge she might have had of Kenneth's illegal income and her qualification as an "innocent

---

* Honorable Carolyn R. Dimmick, District Judge for the United States District Court for the Western District of Washington, sitting by designation.

spouse" under Code § 6013(e). At this meeting, Sylvia provided agent Hartley with a copy of a sworn statement by Kenneth Sliwa of April 1978, stating that at no time during the tax years at issue was Sylvia aware of Kenneth's embezzlement activities, and that she had not benefited in any way from the income derived therefrom.

A month later, in December, 1983, Sylvia filed an action against the United States in the Arizona district court to quiet title to the Sliwa residence. Her verified complaint asserted both that any defect in the notarization of her husband's release of the property had been cured,[1] and that she qualified as an "innocent spouse" under Code § 6013(e).

The district court granted Sylvia's motion for partial summary judgment, ruling that Kenneth had indeed conveyed all of his interest in the Sliwa residence in 1978 rather than in 1982, and quieting title to the residence in favor of Sylvia.[2]

On July 10, 1984, the Commissioner issued Sliwa a statutory notice of deficiency, similar to the joint notice issued in 1981, asserting deficiencies in her income for 1975, 1976, and 1977 based on Kenneth's embezzlement activities. Sliwa filed a Tax Court Petition on September 27, 1984, claiming that the notice of deficiency was barred by the statute of limitations, and that she was relieved of any liability as an innocent spouse.

The case was assigned to the IRS Appeals Division for settlement discussions. An Appeals Officer, Robert Desiderati, suggested that information contained in Sylvia's bank records would be useful in resolving the case, and advised her counsel, that it was her burden to produce the records. Although counsel believed that these documents were irrelevant and that documents already in the IRS files would confirm the allegations of the petition, he nevertheless subpoenaed and received the bank records. In May 1985 counsel for Sliwa informed Desiderati that he had the documents, but apparently no one from the Appeals Office ever requested or inspected the records at that time.

On June 28, 1985, Sliwa served formal discovery requests on the Commissioner, including interrogatories, a request for admissions, and a request for production of documents. The Commissioner responded by letter July 18, 1985, stating that discovery was premature because the parties had not yet had an opportunity to exchange information on an informal basis, as provided in *Branerton Corp. v. Commissioner*, 61 T.C. 691 (1974), and because the case was still under the jurisdiction of the IRS Appeals Division for purposes of settlement negotiations. Sliwa responded that *Branerton* was not controlling because she had made "exhaustive, albeit unsuccessful" efforts to obtain informal discovery, and because the case was already set for trial in the Tax Court at the time the discovery requests were served. The Commissioner moved for a protective order, arguing that Sliwa was premature in undertaking formal discovery. Sliwa filed a response and a motion for summary judgment. On September 25, 1985, the Tax Court held a hearing at which all motions were taken under advisement. Some time thereafter the Commissioner conceded all the issues in the case, stipulating to a dismissal of his notice of deficiency in November 1985.

On December 4, 1985, Appellant moved for litigation costs pursuant to Internal

---

1. The notary public failed to sign the verification on the quitclaim deed, although a notary's seal was placed below Kenneth's signature. Arizona law requires the signature of a notary public for an acknowledgment to be valid. To correct this defect, Kenneth and appellant executed a warranty deed, which was recorded on August 17, 1981, conveying the property to an office of the title company. The officer then executed a joint tenancy deed, recorded on the same day, conveying the property to Kenneth and appellant. On February 19, 1982, Kenneth executed a quitclaim deed conveying the property back to appellant.

2. The court also awarded attorney's fees to appellant under Code § 7430. The government filed notices of appeal to this court from both adverse rulings, but subsequently dismissed them.

Revenue Code section 7430. That section[3] provides for an award of reasonable litigation costs when the taxpayer has "substantially prevailed with respect to the amount in controversy," § 7430(c)(2)(A)(ii)(I) *and* "establishes that the position of the United States *in the civil proceeding* was unreasonable," § 7430(c)(2)(A)(i) (emphasis supplied);[4] *Baker v. Commissioner,* 787 F.2d 637, 638 (D.C. Cir.1986). The Commissioner conceded that Sliwa had substantially prevailed in the proceeding, but disagreed that the position of the United States had been unreasonable. The Tax Court denied Sliwa's motion for fees and her subsequent motion for reconsideration. That court's final decision was entered on June 12, 1986, from which Sliwa now timely appeals.

## STANDARD OF REVIEW

In denying Sliwa's motion for fees and her subsequent motion for reconsideration, the Tax Court held that the Commissioner's pre-litigation conduct was irrelevant to the determination whether the Commissioner's position "in the civil proceeding" was reasonable, and concluded that the "position of the United States" in the post-petition Tax Court litigation was reasonable.

We review decisions of the Tax Court on the same basis as decisions in civil bench trials in the district courts. *Mayors v.* *C.I.R.,* 785 F.2d 757 (9th Cir.1986). The Tax Court's construction of section 7430 determines a question of law and is reviewed *de novo. Betson v. C.I.R.,* 802 F.2d 365 (9th Cir.1986); *Orvis v. C.I.R.,* 788 F.2d 1406 (9th Cir.1986). The Tax Court's determination of the reasonableness of the Commissioner's position under section 7430 presents a mixed question of law and fact, also subject to *de novo* review. *McConney v. United States,* 728 F.2d 1195, 1199–1203 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *see also Franklin v. Commissioner,* 544 F.2d 1045, 1047 n. 3 (9th Cir.1976). The Tax Court's findings of fact are reversed only if clearly erroneous.

## DISCUSSION

### Construction of Section 7430

■ This case presents an interesting issue of statutory construction. Appellant contends that section 7430 would be rendered ineffective were courts not permitted to consider the government's pre-litigation conduct in determining the reasonableness of the "position of the United States in the civil proceeding," and that the government's conduct in this case, which in fact ultimately compelled Appellant to file her Tax Court petition, was unreasonable. The Commissioner, on the other hand, asserts

---

**3.** All section references are to the Internal Revenue Code of 1954, as amended. Section 7430 provides, in pertinent part:

    SEC. 7430. AWARDING OF COURT COSTS AND CERTAIN FEES.
    (a) IN GENERAL.-In the case of any civil proceeding which is—
    (1) brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, and
    (2) brought in a court of the United States (including the Tax Court and the United States Claims Court), the prevailing party may be awarded a judgment for reasonable litigation costs incurred in such proceeding.
    (b) LIMITATIONS.-....
    (c) DEFINITIONS.—For purposes of this section-
    ....
    (2) PREVAILING PARTY.-
    (A) IN GENERAL.-The term "prevailing party" means any party to any proceeding described in subsection (a) (other than the

United States or any creditor of the taxpayer involved) which—
    (i) establishes that the position of the United States in the civil proceeding was unreasonable, and
    (ii) (I) has substantially prevailed with respect to the amount in controversy, or
    (II) has substantially prevailed with respect to the most significant issue or set of issues presented.
    (B) DETERMINATION AS TO PREVAILING PARTY.-Any determination under subparagraph (A) as to whether a party is a prevailing party shall be made-
    (i) by the court, or
    (ii) by agreement of the parties.
    (3) CIVIL ACTIONS.-The term "civil proceeding" includes a civil action.

**4.** The statute also also requires that petitioner have exhausted the available administrative remedies. 26 U.S.C. § 7430(b)(2). Here the Commissioner concedes, and the tax court found, that this requisite had been met.

that the phrase "in the civil proceeding" operates to limit the court's examination of the government's position only to conduct occurring *after* the taxpayer initiates litigation by filing a petition in the Tax Court.

This circuit has yet to interpret the meaning of the phrase "the position of the United States in the civil proceeding" in section 7430, and those circuit courts which have addressed the issue are divided on their construction of the statute.[5] The District of Columbia, Tenth, and Eleventh Circuits have held that the "position of the United States" which must be examined is limited to the government's in-court litigating position. *Ewing and Thomas, P.W. v. Heye,* 803 F.2d 613 (11th Cir.1986); *Baker v. Commissioner,* 787 F.2d 637, 641 & n. 8 (D.C.Cir.1986); *United States v. Balanced Financial Management, Inc.,* 769 F.2d 1440, 1450 (10th Cir.1985). The First and Fifth Circuits, on the other hand, agree that the government's position both in its prelitigation administrative proceedings and after the commencement of the litigation should be examined for reasonableness. *Kaufman v. Egger,* 758 F.2d 1 (1st Cir.1985); *Powell v. C.I.R.,* 791 F.2d 385 (5th Cir.1986). After much consideration, we adopt this latter construction.

In *Kaufman v. Egger,* 758 F.2d 1 (1st Cir.1985), the First Circuit cited the legislative history of section 7430 in support of its broad reading of the statute. Noting that the intent of Congress in passing section 7430 was to "deter abusive actions and overreaching by the Internal Revenue Service and ... enable individual taxpayers to vindicate their rights regardless of their economic circumstances," H.R.Rep. 97–404, 97th Cong., 2d Sess. 13 (1982), the *Kaufman* court determined that it would

> frustrate the purpose of Section 7430 if [the court] were to interpret it in such a way that the IRS, after causing a taxpayer all kinds of bureaucratic grief at the

administrative level, could escape attorney's fee liability by merely changing its tune after the initiation of a suit by the taxpayer.

*Kaufman,* 758 F.2d at 4. The court therefore found that Congress intended the liability of the IRS to be triggered by unreasonable IRS conduct regardless of at which stage in the proceedings such conduct occurred, and that pre-litigation conduct could be relevant in determining liability. *Id.*

The Fifth Circuit reached the same conclusion in *Powell v. Commissioner* by analogy to the Equal Access to Justice Act (EAJA) and the legislative history of its amendments, noting the similarity of the intent behind and purposes of the two statutes. *See generally, Powell,* 791 F.2d 385 (5th Cir.1986). Like the *Kaufman* court, the court in *Powell* noted that the intent of the statute might be frustrated were the court not to examine conduct by the government in administrative proceedings before the onset of the litigation in its consideration of the reasonableness of the government's position. ("If a taxpayer is forced to resort to litigation by an unreasonable IRS administrative position, § 7430 does not require the captious position to be ignored. The taxpayer must be the plaintiff in Tax Court proceedings. If the IRS takes an arbitrary position and forces a taxpayer to file a suit, then, after the papers have been filed, becomes sweet reason, the taxpayer should be permitted to recover the cost of suing") 791 F.2d at 391.

Other courts have adopted far more limited construction of the statute, reasoning that the presence of the qualifying phrase "in the civil proceeding" expresses an explicit congressional intent to limit the court's examination of government conduct to that following the initiation of litigation by the taxpayer. In *Baker v. Commissioner,* for example, the District of Colum-

---

5. The lower courts are similarly divided. *Compare Giesecke v. United States,* 637 F.Supp. 309 (W.D.Tex.1986); *Finney v. Roddy,* 617 F.Supp. 997 (E.D.Va.1985); *Rosenbaum v. Internal Revenue Service,* 615 F.Supp. 23 (N.D.Ohio 1985) (all holding prelitigation conduct to be relevant to the determination of reasonableness of the

government's position) with *Walsh v. United States,* 85 T.C. 9411 (Minn.1985); *Contini v. United States,* 84 T.C. 9969 (N.D.Cal.1984); *Brazil v. United States,* 84 T.C. 9596 (Ore.1984) (all reviewing only the government's in-court litigating position).

bia Circuit wrote that "[u]nlike the original and amended versions of the EAJA, the phrase 'position of the United States' in section 7430 is immediately modified by the word 'in the civil proceeding,' *indicating a focus narrower than the EAJA's.*" 787 F.2d 637 at 641–42, n. 8. Setting great store in this qualifying phrase, that court therefore concluded that section 7430 and its legislative history "are both literally and sensibly read to cover only costs incurred once litigation commences, and that the relevant *position* of the United States is the one taken *in the civil proceeding.*" *Id.* at 641 (emphasis original). *Accord, Ewing and Thomas, P.W. v. Heye,* 803 F.2d 613 (11th Cir.1986); *United States v. Balanced Financial Management, Inc.,* 769 F.2d 1440, 1450 (10th Cir.1985).

We believe that such a restrictive construction of section 7430 is unwarranted, and, indeed, undermines the legislative intent of the statute to enable taxpayers to "vindicate their rights regardless of their economic circumstances." It is clear that only "litigation costs," that is, only those costs and fees actually incurred in and after preparing and filing the petition in the tax court, may be recovered under the statute. 26 U.S.C. § 7430(a), (c). But it does not necessarily follow, as the Baker court and others have assumed, that relevant events leading up to, and indeed effectively establishing, that position may not be examined in order to determine the reasonableness or unreasonableness of the government's position at trial. If the conduct of the government at later administrative levels is unreasonable, it stands to reason that the position of the government in defending in the civil proceeding in the first place may be unreasonable as well if based upon that conduct. *See e.g.* Staff of Senate Committee on Finance, Technical

Explanation of Committee Amend., 127 Cong.Rec. §§ 15587, 15594 (Dec. 16, 1981) ("[T]axpayers who prevail in civil tax actions should be entitled to awards ... when the United States has acted unreasonably *in pursuing the case*") (emphasis added), *cited in Kaufman,* 758 F.2d at 4. After all, as the first circuit noted, *only* the taxpayer may initiate tax court litigation; and only litigation costs may be assessed against the government. The commissioner therefore has at his disposal a powerful tool—and incentive for taxpayer settlement—in keeping the taxpayer out of court for as long as possible and then settling the case when his bluff is called. If the statute is to have any bite at all, courts must be permitted to look to earlier conduct to determine whether the initial filing of a tax petition was provoked by unreasonable conduct.[6] We therefore agree with Appellant that Congress could not have intended the court to be blind to unreasonable government conduct merely because it occurred prior to an arbitrary demarcation point. Whether an aggrieved taxpayer is to be made whole cannot rationally turn on such an unyielding formalism.

In reaching its decision on whether the government's position was unreasonable, the Tax Court expressly disregarded the government's pre-litigation conduct, relying upon *Baker v. Commissioner, supra.* Because we disapprove the court's approach in *Baker* (and other cases which preclude the court's examination of administrative conduct underlying the government's litigation position), we find the Tax Court's construction of section 7430 in this case to be erroneous.

Generally in such circumstances we would remand to the tax court for reconsid-

---

6. Our holding accords with the recent Congressional activity surrounding the re-enactment of Section 7430. The Tax Reform Act of 1986 amends section 7430(c) to provide that, for civil tax actions commenced after December 31, 1985, the term "position of the United States" includes both the position taken by the United States in the civil proceeding, and "any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon

which such proceeding is based." 26 U.S.C. § 7430(c)(4)(B) (1987). Although they are not controlling in this case (because Sliwa's tax proceeding was commenced before December 31, 1985) we view these amendments as shedding light on Congress' mandate that § 7430 provide attorneys' fees to a prevailing party in cases where litigation is necessitated by the government's unreasonable conduct at the administrative level.

eration. However, where as here the facts are undisputed, we may consider *de novo* the application of the correct legal standard to the facts as found. *See United States v. McConney*, 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984) (mixed questions of fact and law reviewed *de novo*); *see also Franklin v. Commissioner*, 544 F.2d 1045, 1047 n. 3 (9th Cir.1976) (when factual issues are generally undisputed and only legal implications uncertain, the duty of the court is to decide "whether the Tax Court correctly applied the statute to the factual situation found by the Tax Court.") We turn therefore to an examination of the conduct of the government in this case, both before and after the taxpayer filed her petition. Although we have determined that the tax court erred in not considering the government's prelitigation conduct, we find that even examining the government's pre-litigation conduct in this case, the Commissioner's position was reasonable, and therefore the decision of the tax court must be affirmed.

### Pre-litigation Conduct:

■ Appellant bases her argument that the government's pre-litigation conduct was unreasonable on the principle that "the continued assertion of a position with knowledge that the position is based upon an erroneous assumption is *per se* unreasonable" (citing *Hallam v. Murphy*, 586 F.Supp. 1, 3 (N.D.Ga.1983)). She asserts that because she had apprised the Commissioner of her qualification as an innocent spouse before the Commissioner's second notice of deficiency, that notice was without foundation and was itself unreasonable. Appellant points to 1) the verified complaint in her district court action to remove the liens from her residence in which she asserted innocent spouse status, and 2) the meeting between appellant and agent Hartley of the IRS in which appellant asserts the agent "led [her] to believe that she was relieved from liability ... under section 6013(e)" as evidence that the Commissioner was aware of her innocent spouse statute before issuing the notice.

First, Appellant seems to have misunderstood the effect of the summary judgment in her district court action. That litigation resolved only the issue of Kenneth Sliwa's interest, if any, in the property; it did not purport to decide whether appellant was an innocent spouse, or whether she might still be liable, independently, for deficiency in her part of their joint return. Despite the fact that Sliwa asserted her innocent spouse status as a defense to the liens on her home, the partial summary judgment granted by the district court which quieted titled in her favor was by no means res judicata with respect to the question of that status.

Further, because she was advised by the government to produce her bank records *after* the meeting with Hartley, we may conclude that the deficiency notice was issued in part because Appellant had *failed* at the meeting with Hartley to substantiate her innocent spouse claims. Appellant concedes that the Commissioner did review the bank records prior to his concession in this case, and we must assume that they were at least in some respects relevant to his later concession.

In short, although Appellant may have *thought* that she had given the Commissioner sufficient information from which to conclude that she was an innocent spouse, the Commissioner was clearly not satisfied with that information prior to Sliwa's production of the bank records. Because it is appellant's burden to prove herself entitled to the innocent spouse provision, *Adams v. Commissioner*, 60 T.C. 300, 303 (1973); *See also New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934) (burden is on the taxpayer to prove entitlement to benefit of any code section), we cannot say that the government was unreasonable in requiring better proof than Sliwa's mere assertions of innocence (whether in a verified complaint or no), or at least some independent corroboration of those assertions which ultimately came in the form of the bank records. In such circumstances, the Commissioner's issuance of a notice of deficiency was not unreasonable.

*Litigation Conduct:*

█ Appellant also argues that the government's position during the litigation itself was unreasonable because it was calculated to obstruct and delay. She points especially to the government's failure to respond to her discovery requests, and its filing of a motion for a protective order. The Tax Court has held that its discovery procedures should be used "only after the parties have made reasonable informal efforts to obtain needed information voluntarily." *Branerton Corp. v. Commissioner,* 61 T.C. 691, 692 (1974). *See also* Tax Court Rule 70(a)(1). Sliwa contends that she satisfied the requirements of the rule because, in the unique circumstances of the case, all of the "relevant information" was already in the possession of the government prior to litigation as a result of Sliwa's meeting with Agent Hartley in November of 1983 and her informal discussions with officer Desiderati after the filing of the petition, when the case was still under the jurisdiction of the IRS Appeals Division for settlement purposes. However, informal discovery required to satisfy the *Branerton* rule cannot be carried on until a case is begun in the Tax Court. Because Sliwa never officially engaged in informal discovery, the Tax Court did not err in its determination that the Commissioner's motion for a protective order was a reasonable expression of his "legitimate concerns about the use and timing of formal discovery."

Further, it is clear that not all of the "relevant information" to its concession was in the possession of the government prior to Sliwa's filing her tax court petition. Sliwa contends that the inference of the Tax Court that the bank records were relevant to the government's concession in the case is unsupported, arguing that the Commissioner could not have depended upon the records for his concession because he refused to subpoena them. This reasoning is fallacious. Again, it is the burden of the taxpayer to prove that she is entitled to the benefit of any provision of the Internal Revenue Code. *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934)). As we mentioned above, the fact that the Commissioner required Ms. Sliwa to produce bank records to support her assertion that she was an innocent spouse is not unreasonable; it is beyond cavil that such records can be relevant to the determination of whether a spouse is "innocent" under section 6013(e). *See Church v. Commissioner,* 37 T.C.M. 1236, 1240 (CCH) (1978) (wife found not to be an innocent spouse where, *inter alia,* a large balance was found in her savings account); *Schwartz v. Commissioner,* 41 T.C.M. 1002, 1008 (CCH) (1981) (same). And again, especially in light of Appellant's admission that the bank records *were* examined by the government after the motion for summary judgment in the Tax Court, we must assume that the records contributed, at least in part, to the government's concession.

Although it is true that settlement of the case may have been obtained sooner had the bank records been inspected while the case was still under the jurisdiction of the IRS Appeals Office, we cannot say that the Commissioner was unreasonable in waiting to concede the case until someone from the IRS had had a chance to review the records. That that opportunity did not occur until six months after the bank records had been obtained added to the delay. But it was not objectively unreasonable, especially given that the case was settled quite soon after a hearing on the matter was held in tax court.

## CONCLUSION

Thus, although in a proper case, the prelitigation conduct of the government may render its position in the civil proceeding "unreasonable," we find that Ms. Sliwa's was not such a case. Accordingly, the decision of the Tax Court is AFFIRMED.

BOOCHEVER, Circuit Judge, concurring and dissenting:

The majority opinion ably sets forth the reasons why prelitigation conduct should be considered in determining whether the "position of the United States in the civil proceeding" is unreasonable. I agree

wholeheartedly with that portion of the opinion.

I believe, however, that the case should be remanded to the Tax Court to determine under the proper standard whether the United States' conduct was unreasonable in this case. In the event of a further appeal on this issue our review would be illuminated by the Tax Court's decision.

If I were to decide the issue, however, I would hold that the conduct *was* unreasonable. In the earlier quiet-title case in which the government's conduct was found to be unreasonable, the "innocent spouse" issue was raised. Also, conferences were held prior to the government's forcing Mrs. Sliwa to commence this action to secure release from the deficiency notice. Despite being furnished with an affidavit from Mr. Sliwa indicating that his spouse was totally unaware of his embezzlement and Mrs. Sliwa's statement to that effect, the government never requested bank records or any other information available to Mrs. Sliwa, which was not furnished. If bank records were important to the government's decision it should have requested them rather than forcing the taxpayer to expensive litigation.

After the proceeding was instituted, all of the evidence indicated that Mrs. Sliwa was an innocent spouse. The purpose of securing the bank records was to rebut that evidence. The burden should have been on the government to undergo the expense of producing the records, rather than requiring Mrs. Sliwa to subpoena them. Moreover, once Mrs. Sliwa obtained the records, the government unjustifiably delayed examination of them, forcing Mrs. Sliwa to commence discovery in view of the imminent trial setting.

Congress has wisely provided for attorney's fees which partially compensate taxpayers for expenses and inconvenience caused by unreasonable conduct. Here, the government unnecessarily precipitated the litigation and unreasonably added to the expenses once suit was filed.