MARTIN T. EGAN AND SANDRA S. EGAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12017-87.     Filed September 28, 1988.

Martin T. Egan and Sandra S. Egan, pro se.
*William D. Reese,* for the respondent.

SHIELDS, *Judge:* In a deficiency notice dated February 5, 1987, respondent determined that there was a deficiency in petitioners' income tax for 1984 in the amount of $12,491 and that they were liable for additions to tax under sections 6653(a) and 6661, I.R.C. 1954, in the respective amounts of $624.55 and $3,122.75. When the case was called from the calendar for trial on April 11, 1988, the parties filed a stipulation of settled issues in which respondent conceded that there is no deficiency in income tax or additions to tax due from petitioners for 1984. The matter is before us at this time on petitioners' motion for litigation costs pursuant to Rule 231.[1]

#### FINDINGS OF FACT

After a careful review of the record, including the affidavits and exhibits filed in support of petitioners'

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.

motion and respondent's objection, we find it unnecessary to hold an evidentiary hearing as requested by petitioners because the facts in dispute are not relevant to our conclusion. The relevant facts which are undisputed are set out below.

Petitioners resided in Campbell, California, at the time their petition was filed. In or before 1984, petitioner Martin T. Egan (hereinafter referred to as petitioner in the singular) purchased a certain parcel of real property (the Elwood property) at a trustee's sale for the benefit of himself and his sister and her husband who had advanced $28,000 of the funds used by petitioner to obtain the cashier's checks needed by petitioner to bid at the sale. The Elwood property was sold in 1984 and the proceeds of the sale including the $28,000 which belonged to petitioner's sister and brother-in-law were deposited by petitioner in one of his bank accounts (S & E account). In 1984, petitioner also sold a parcel of real property (the Edith property) which he held as part of a joint venture and in which he had a basis of $10,500. He deposited the entire sales proceeds in the S & E account.

By letter dated April 16, 1986, respondent's auditor, Kevin Abernathy, requested a conference with petitioners for June 11, 1986, concerning their 1984 return. In the letter, Mr. Abernathy requested that petitioners bring to the conference bank statements for all of their personal and business bank accounts for December 1982 through January 1985. Petitioner appeared at the conference, produced some of the requested documents, and attempted to orally explain the apparent discrepancy reflected by the bank records which were incomplete since petitioner had failed to bring the records on the S & E account.

On June 12, 1986, the auditor mailed petitioners a request for documents including statements on the S & E account which had been used by petitioner in connection with his bids at trustees' sales. A second meeting between petitioner and the auditor was held on June 26, 1986, at which time petitioner produced documentation with respect to the S & E account. After reviewing petitioner's records, including those on the S & E account, Mr. Abernathy concluded that petitioners' taxable gross receipts for 1984 were understated

by $38,500 of which $28,000 was represented by unreported proceeds received by petitioner from the sale of the Elwood property and $10,500 was represented by unreported proceeds received from the sale of the Edith property.

On October 3, 1986, petitioner again met with Mr. Abernathy and attempted to orally explain the $38,500 discrepancy. He stated that the $28,000 consisted of funds advanced to him by his sister and brother-in-law for use in his bids at trustees' sales and that this sum was returned to them in 1985 when he ceased attending such sales. With respect to the deposit of the proceeds from the sale of the Edith property, petitioner explained that he had $10,500 invested in the property and, to that extent, the deposit represented a tax-free return of capital. At this meeting, petitioner produced no documentary evidence tending to directly corroborate his oral statements with respect to either of the items in question.

At the end of the meeting on October 3, 1986, and also by letter dated October 5, 1986, Mr. Abernathy requested that by October 17, 1986, petitioner provide him with documents verifying the ownership of the $28,000 item as well as petitioner's basis in the Edith property. On October 15, 1986, petitioner mailed to Mr. Abernathy the following: (1) A letter dated October 14, 1986, from Catherine Isaacson (petitioner's sister) stating that $28,000 of the deposits to petitioners' bank account in 1984 belonged to her and her husband and was returned to them by petitioner in 1985; and (2) a copy of a joint venture agreement relating to the Edith property which indicated that petitioner's investment in the joint venture was $10,500.

On October 20, 1986, petitioners received from respondent a Form 1902B, or 30-day letter, in which an upward adjustment to their taxable income for 1984 was proposed for the above $38,500. On October 21, 1986, Mr. Abernathy telephoned petitioner and indicated that he had not yet received the documentation contained in petitioner's mailing of October 15. Petitioner immediately hand-delivered copies of the documents to the auditor, but on the same day, petitioner's mailing of October 15 arrived at Mr. Abernathy's office.

Mr. Abernathy did not consider the additional documentation adequate support for petitioner's claims, and again requested that petitioner furnish transaction documents supporting his claims with respect to the return of the $28,000 to the Isaacsons and petitioner's basis in the Edith property. On October 22, 1986, a revised 30-day letter was mailed to petitioners which included additions to tax under sections 6653(a) and 6661, as well as the original income adjustment of $38,500.

Petitioners' claim that upon receipt of the revised 30-day letter, they mailed to respondent, via certified mail return receipt requested, a protest of the proposed changes to their 1984 return and a request for a hearing with an appeals officer. Petitioners also claim that the certified receipt which was returned to them indicates that respondent received the protest and request for an appeals conference on November 3, 1986. Petitioners, however, did not submit a copy of the receipt in support of their motion, and respondent claims to have no record of receiving the protest or request. In view of our conclusion which is hereinafter set out, the existence or nonexistence of the protest and request for an appeals conference is irrelevant.

Upon receipt of respondent's notice of deficiency, petitioners contacted representatives of respondent in an attempt to find out why they had not been granted a hearing with an appeals officer and were told that their protest and request was not in the file. They were also told that it was too late to file a new protest or request and that their only avenue for relief was to petition the Tax Court.

Donald G. Daiker, counsel for petitioners, filed their petition herein on May 8, 1987, and stated, inter alia, that "The alleged omitted income of $38,500 consists of funds advanced by others to be used for the purchase of real property and said funds were not used and were returned to the parties advancing the sums." The petition contains no allegation that part of the deficiency was due to the erroneous treatment by respondent of the return of petitioner's basis in the Edith property. In an answer filed on July 6, 1987, respondent's district counsel denied any error in the determination and denied petitioners' characterization of the alleged omitted income for lack of sufficient informa-

tion. Prior to filing the answer, respondent's district counsel was not involved in this case.

The case was assigned to Appeals Officer Clare Green on November 9, 1987. Ms. Green completed her review of the case file on December 18, 1987, and concluded that the portion of the adjustment which was attributable to the $28,000 item should be conceded by respondent due to the hazards of litigation as reflected in the expected testimony of petitioner's sister.

On December 22, 1987, Ms. Green conveyed her conclusion regarding the $28,000 item to Mr. Daiker and requested that any verification which he had with respect to the $10,500 item attributable to the Edith property be forwarded to her as soon as possible inasmuch as the case was set for trial on April 11, 1988. Having heard nothing from Mr. Daiker, on January 7, 1988, Ms. Green attempted to reach him by telephone to no avail. At her request, respondent's counsel then wrote Mr. Daiker on January 11, 1988, requesting the documentation.

By letter dated January 18, 1988, Mr. Daiker forwarded to Ms. Green documents concerning the 1984 Edith property transaction and a letter of explanation which were received by respondent on January 21, 1988. In his letter, Mr. Daiker stated that the enclosed documents were the same as those that petitioner had originally offered to Mr. Abernathy. Upon receipt of these documents by respondent's office, Ms. Green was out of town on business until February 5, 1988. On her return, she reviewed the documents and Mr. Daiker's letter, and on February 12, 1988, advised Mr. Daiker by telephone that respondent was willing to concede the $10,500 item attributable to the Edith property in view of the hazards of litigation reflected in the materials submitted with his letter of January 18, 1988.

In a telephone conversation with Ms. Green on February 23, 1988, Mr. Daiker agreed that under the circumstances of this case, petitioners were not entitled to litigation costs, and by letter dated March 1, 1988, Ms. Green forwarded to Mr. Daiker a proposed stipulation which reflected a concession by respondent that there was no deficiency in tax or additions to tax due from petitioners for 1984 and a

concession by petitioners that respondent was not liable for litigation costs. Mr. Daiker did not respond to her letter and on March 23, 1988, or approximately 3 weeks before the trial date, Ms. Green telephoned him and was informed that petitioners would not concede the litigation costs. On March 24, 1988, the issue with respect to the litigation costs was removed by Ms. Green from the proposed stipulation and it was returned to Mr. Daiker. The stipulation was executed for petitioners by Mr. Daiker on March 28, 1988, by counsel for respondent on April 8, 1988, and filed with the Court when the case was called from the trial calendar on April 11, 1988. On or about May 4, 1988, petitioners paid an attorney fee in the amount of $6,495 to Mr. Daiker for services rendered in connection with their tax case. The amount of the fee was in accordance with a contingent fee arrangement entered into on February 5, 1987. On May 11, 1988, petitioners appearing pro se filed their motion for litigation costs.

## OPINION

In a proceeding before this Court to determine the amount of any tax, interest, or penalty, we are authorized to award to the prevailing party a judgment for the reasonable litigation costs incurred by such party in such proceeding. Sec. 7430(a).[2] To qualify as the prevailing party

---

[2]Insofar as applicable here, sec. 7430 reads as follows:

SEC. 7430. AWARDING OF COURT COSTS AND CERTAIN FEES.
    (a) IN GENERAL.—In the case of any civil proceeding which is—
        (1) brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, and
        (2) brought in a court of the United States (including the Tax Court and the United States Claims Court),
the prevailing party may be awarded a judgment (payable in the case of the Tax Court in the same manner as such an award by a district court) for reasonable litigation costs incurred in such proceeding.
    (b) LIMITATIONS.—
        (1) REQUIREMENT THAT ADMINISTRATIVE REMEDIES BE EXHAUSTED.—A judgment for reasonable litigation costs shall not be awarded under subsection (a) unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service.
        *      *      *      *      *      *      *
    (c) DEFINITIONS.—For purposes of this section—
        *      *      *      *      *      *      *
        (2) PREVAILING PARTY.—

within the meaning of section 7430(a), petitioners must establish among other things that the position of the United States (respondent in this proceeding) was not substantially justified. Sec. 7430(c)(2)(A)(i). In addition, petitioners must also establish that with respect to the amount in controversy, or with respect to the issues presented, they substantially prevailed in the proceeding (sec. 7430(c)(2)(A)(ii)); that at the commencement of the proceeding they had a net worth of not more than $2 million (sec. 7430(c)(2)(A)(iii)); and that they exhausted the administrative remedies available to them within the Internal Revenue Service (sec. 7430(b)(1)). While respondent concedes that petitioners have substantially prevailed in this proceeding with respect to the amount in controversy, we are unable to determine whether petitioners have complied with the other statutory requirements because the record before us does not disclose the amount of their net worth, and the question of whether they exhausted their administrative remedies is dependent upon disputed facts, i.e., whether or not they requested an appeals conference. The resolution of these additional requirements is not necessary, however, in view of our conclusion that petitioners have failed to establish that the position of respondent was not substantially justified.

In some cases arising under section 7430 prior to its amendment by the 1986 Tax Reform Act, the conduct of respondent's agents at the administrative level was considered in determining whether respondent's position in the

---

(A) IN GENERAL.—The term "prevailing party" means any party to any proceeding described in subsection (a) (other than the United States or any creditor of the taxpayer involved) which—

(i) establishes that the position of the United States in the civil proceeding was not substantially justified,

(ii)(I) has substantially prevailed with respect to the amount in controversy, or

(II) has substantially prevailed with respect to the most significant issue or set of issues presented, and

(iii) meets the requirements of section 504(b)(1)(B) of title 5, United States Code (as in effect on the date of the enactment of the Tax Reform Act of 1986 and applied by taking into account the commencement of the proceeding described in subsection (a) in lieu of the initiation of the adjudication referred to in such section).

    *      *      *      *      *      *      *

(4) POSITION OF UNITED STATES.—The term "position of the United States" includes—

(A) the position taken by the United States in the civil proceeding, and

(B) any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based.

controversy was substantially justified. See *Sliwa v. Commissioner*, 839 F.2d 602 (9th Cir. 1988), affg. a Memorandum Opinion of this Court;[3] *Powell v. Commissioner*, 791 F.2d 385 (5th Cir. 1986), revg. a Memorandum Opinion of this Court. In other cases, it was held that only respondent's actions after a petition was filed may be considered in determining whether respondent's position was substantially justified. See *Rutana v. Commissioner*, 88 T.C. 1329 (1987); *Baker v. Commissioner*, 83 T.C. 822 (1984), revd. on other issues 787 F.2d 637 (D.C. Cir. 1986). With the addition of the language now appearing at section 7430(c)(4) by the 1986 Tax Reform Act, we concluded in *Sher v. Commissioner*, 89 T.C. 79 (1987), that Congress had specifically addressed the issue and made it clear that in determining whether respondent's position is substantially justified, administrative actions or inactions are limited to the period beginning with the point at which respondent's district counsel becomes involved in the proceeding.

Again in *Weiss v. Commissioner*, 89 T.C. 779 (1987), we came to the same conclusion with respect to a case arising after the 1986 amendment. However, on appeal, the Second Circuit disagreed and concluded that the focus for determining the position of the United States under section 7430(c)(4) should be "on the Commissioner's final position as set forth in the statutory notice of deficiency." *Weiss v. Commissioner*, 850 F.2d 111, 115 (2d Cir. 1988).

The instant case is not appealable to the Second Circuit. Consequently we are not constrained in this case to follow that circuit's decision in *Weiss*. *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). After reviewing our conclusion in *Sher* and with all due respect to the opinion of the Second Circuit in *Weiss*, we decline to follow that decision except in cases appealable to that circuit.

In the case before us, respondent's district counsel first became involved with the preparation and filing of respondent's answer and from that point until the filing of the

---

[3]The Ninth Circuit noted that its holding in *Sliwa* was in accord with sec. 7430 as amended by the Tax Reform Act of 1986. 839 F.2d 602, 607 n. 6. A similar note was made by the Sixth Circuit in its recent opinion in *William L. Comer Family Equity Pure Trust v. Commissioner* (6th Cir., Sept. 9, 1988), n. 1. However, both of these cases arose under sec. 7430 prior to its amendment and, to date, sec. 7430 as amended has been considered only in *Sher* and *Weiss*.

stipulation of agreed issues, all of respondent's activities were devoted to making diligent and reasonable verification of petitioners' claims and to preparing and executing the documents necessary to concede the issues. In fact, petitioners have no complaints with respect to these activities of respondent. Instead, their entire claim for litigation costs is based upon the conduct of respondent's representatives at the administrative level before the district counsel became involved. Consequently, petitioners have failed to establish that respondent's position was not substantially justified. Their motion for litigation costs is hereby denied.

*An appropriate order will be entered.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, WHITAKER, KÖRNER, HAMBLEN, CLAPP, JACOBS, GERBER, WRIGHT, PARR, WILLIAMS, WELLS, RUWE, and WHALEN, *JJ.,* agree with this opinion.

COHEN, SWIFT, and COLVIN, *JJ.,* concur in the result only.