**Darlene MATTINGLY, Plaintiff and Counterclaim Defendant,**

v.

**The UNITED STATES of America, Defendant and Counterclaimant.**

**No. CV–S–87–691–RDF.**

United States District Court,
D. Nevada.

April 21, 1989.

Lionel, Sawyer & Collins by Paul D. Bancroft, Reno, Nev., for plaintiff and counterclaim defendant.

U.S. Atty. William A. Maddox, Las Vegas, Nev., Mark G. Fraase, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant and counterclaimant.

## ORDER GRANTING ATTORNEYS' FEES AND COSTS, AND IMPOSING SANCTIONS

ROGER D. FOLEY, Senior District Judge.

### INTRODUCTION

This order concerns Plaintiff Darlene Mattingly's ("Mattingly") motion for attorneys fees and costs, and imposition of sanctions against Defendant United States of America and its attorneys. See Doc. No. 14.

### FACTS

The present dispute arises out of the alleged nonpayment of payroll taxes by NLV Corporation ("NLV") and the subsequent action taken by the Internal Revenue Service ("IRS"). During the time in ques-

tion, NLV owned and operated three local casinos: (1) Silverbird Casino and Hotel; (2) Silver Nugget Casino; and (3) Silver City Casino. Mattingly was an employee of NLV. From July 7, 1980 to October 24, 1980, Mattingly was the assistant controller for NLV. On October 24, 1980 she was appointed "acting controller." She lasted in this position until December 10, 1980 at which time she was involuntarily terminated. From October 24, 1980 until her termination, Mattingly was on the signature card for NLV. She co-signed checks which had already been prepared and approved by the president of NLV, Fred Crossley. Mattingly alleges that she had no authority to determine which creditors were to be paid. Further, she was not an officer of NLV nor did she own any NLV stock. The Government does not refute any of these facts.

For the period ending December 5, 1980, NLV had a withholding tax liability of $264,374.79. According to then Tax Regulation, section 31.6302(c)–1, an employer was considered to have met its withholding requirement if it had paid to the IRS ninety percent of its tax withholding liability within three business days of the end of the period. December 10, 1980 was the third business day following December 5, 1980.

On December 10, 1980 Mattingly co-signed a check for $237,937.31. This equaled 90% of NLV's tax withholding liability. However, the check was only deposited on December 11, 1980. Pursuant to 26 U.S.C. section 6672 which imposes personal liability on a person who fails to collect and pay over taxes, the IRS assessed a penalty against Mattingly for the willful failure to collect and pay over the employee withholding taxes for NLV and its sister corporation SAR, Inc. This occurred in June 1984, three and a half years after the December 10, 1980 check was signed. The assessment was for the astronomical amount of $1,298,403.58.

Mattingly proceeded to go through the administrative route attempting to settle the matter. In July 1984, Mattingly sent the IRS a formal protest of the assessment which set forth the facts pertinent to her duties at NLV in 1980. On May 10, 1985,

IRS representative Michael Freitas contacted Mattingly. According to Mattingly's affidavit, Freitas stated that it was his opinion that Mattingly was not liable for NLV's alleged failure to pay the withholding taxes. The Government never refutes this testimony. However, Freitas took no action on the matter except to send it to the Administrative Appeals Division. A subsequent hearing date was set for August 1986.

The record is not clear, but at some time the assessment was reduced to $26,437.48 —the 10% amount not reflected in the December 10, 1980 check. On September 29, 1986, Mattingly sent a letter to the Appeals Division outlining again the facts and applicable law surrounding the case. Further, Mattingly's counsel avers that his firm made at least 13 phone calls to IRS personnel attempting to resolve Mattingly's case.

For the tax year 1986, Mattingly was due a personal tax refund in the amount of $41.98. In April 1987, Mattingly received notice from the IRS that her refund was being withheld and that it was being applied towards the penalty assessment. On May 27, 1987, Mattingly made a claim for the amount withheld in which she again stated that the assessment was improper for all of the same reasons that she had previously expounded. Also in May 1987, the IRS sent Mattingly a Notice of Intention to File Levy. On September 2, 1987, Mattingly's claim for the refund was denied by the District Director of the IRS.

After exercising her administrative remedies thoroughly, Mattingly brought suit in this court, pursuant to 26 U.S.C. section 7422, to obtain her refund. The complaint was filed on September 17, 1987—more than three years after the initial assessment was made, and more than six years after she was terminated from NLV.

On November 19, 1987 the Government filed its answer and a counterclaim under 26 U.S.C. section 7401 (Authorizing Suit For Collection) asking for the $26,437.48 assessment which the Government claimed was due pursuant to 26 U.S.C. section 6672.

During the litigation, Mattingly brought a motion to compel discovery. On June 13,

1987, Magistrate Leavitt ordered the Government to disclose certain documents to Mattingly. One week later, on June 20, 1987, the Government consented to the entry of judgment in favor of Mattingly. It is important to note that the Government failed to conduct *any* formal discovery throughout this case. It can be reasonably inferred that the Government, all along, had sufficient information to determine that Mattingly was not personally liable for NLV's withholding taxes.

This court, acting upon the stipulation by both parties, entered a judgment in favor of Mattingly for the amount owed to her plus interest, and dismissed the Government's counterclaim with prejudice on July 11, 1987. In addition, the order did not affect Mattingly's right to move for attorneys' fees and costs, and sanctions, all of which are the subject matter of this order.

## LEGAL ISSUES AND DISCUSSION

### A. GOVERNMENT'S LIABILITY FOR FEES AND COSTS

Mattingly's claim for fees and costs is brought under 26 U.S.C. section 7430 which allows a prevailing party in a civil action against the United States to collect reasonable litigation costs. The party seeking an award of attorney's fees must prove several factors before it can collect. First, the prevailing party must exhaust all administrative remedies available to it. Second, in order to be a "prevailing party," the plaintiff must establish that it substantially prevailed with respect to the most significant issues and that the position of the United States was not "substantially justified." Finally, the party seeking the award must be within certain financial worth limits.

The Government admits that Mattingly has exhausted all of her administrative remedies and that she substantially prevailed with respect to the most significant issue. Further, this court finds that Mattingly meets the financial worth limits so as to pursue an action under section 7430. (See Doc. No. 19, Ex. B). However, the USA argues that the position of the United States was "substantially justified" in pursuing this civil action against Mattingly

and, therefore, an award of attorneys' fees, costs and sanctions is not warranted.

1. **WHETHER THE GOVERNMENT WAS "SUBSTANTIALLY JUSTIFIED" IN PURSUING A COLLECTION ACTION AGAINST MATTINGLY**

■ As a preliminary matter, it is necessary to determine what actions by the Government can be reviewed in order to make judgment whether the Government's assessment against Mattingly was "substantially justified." The Government contends that the court may consider only those actions taken by the IRS after the District Counsel of the IRS became involved. The Government states that 26 U.S.C. section 7430 provides that whether the "position of the United States" is substantially justified is relevant only after the complaint is filed.

The Government's argument is not persuasive. Subsection (c)(4) clearly states:

The term "position of the United States" includes (A) the position taken by the United States in the civil proceeding, and (B) any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based.

The statute only states that the position of the United States "includes" these instances, not that it is exclusively tied to these instances. Further, the Ninth Circuit has considered this statute and has come to a conclusion opposite that of the Government's. In *Sliwa v. C.I.R.*, 839 F.2d 602 (9th Cir.1988), the court held that, in making a decision on attorneys' fees under Section 7430, the trial court should consider the government's position in its prelitigation administrative proceedings and its position after commencement of the litigation for reasonableness.

The court, criticizing the Government's position, stated:

We believe that such a restrictive construction of section 7430 is unwarranted, and, indeed, undermines the legislative intent of the statute to enable taxpayers

to "vindicate their rights regardless of their economic circumstances." *Id.* at 607.

[Note: The government correctly points out that section 7430 was amended by the Tax Reform Act of 1986 and that the court in *Sliwa* analyzed the prior statute. However, the court in *Sliwa* in note 6 recognized the amended version of section 7430 and reiterated its view that administrative action should be reviewed in a section 7430 claim. The court stated:

> [w]e view these amendments as shedding light on Congress' mandate that section 7430 provide attorneys' fees to a prevailing party in cases where litigation is necessitated by the government's unreasonable conduct at the administrative level.]

This court is bound by the rulings of the Ninth Circuit and, further, finds the ruling of *Sliwa* sound. Most of the action taken against a taxpayer is prelitigation. Excluding these actions from the protection of section 7430 would allow the IRS limitless ability to harass undeserving citizens so long as litigation was not involved. This court thus finds it appropriate to analyze the Government's position both prior to and after the commencement of the litigation proceedings in determining whether the Government's actions were substantially justified.

Mattingly raises three issues upon which she contends prove that the Government was not substantially justified in bringing its assessment action against her personally. First, she argues that the taxes in question were actually paid. The following issues deal with whether Mattingly is a person who falls under section 6672—i.e. was Mattingly a "responsible" person and, if so, did she "willfully" fail to collect and pay over the due taxes to the IRS. Mattingly made these arguments several times, both at the administrative and litigation levels. It constantly fell on deaf ears until the stipulated agreement.

a. Whether there was a failure to collect and pay over the withholding taxes of NLV.

As stated above, during 1980 an employer met its withholding obligation if ninety percent of its tax withholding liability was paid to the IRS within three business days of the end of the period. Mattingly co-signed a check on December 10, 1980 for the ninety percent figure which was the third business day from the date NLV's payment was due. Further, Mattingly was fired on December 10, 1980. Even though the Government contends that the actual deposit of the taxes was not made until December 11, 1980, this court finds it difficult to determine if Mattingly could have, in any way, prevented the alleged tardiness. More importantly, with respect to this issue, is whether Mattingly's signing of the check constitutes, in light of her termination, collection and payment of the due amount.

The facts are deficient for this court to make a determination whether Mattingly failed to make payment to the IRS.

b. Whether Mattingly was a "responsible person" within the meaning of 26 U.S.C. section 6672.

■ The purpose behind 26 U.S.C. section 6672 is "to cut through the shield of organizational form and impose liability upon those actually responsible for an employer's failure to withhold and pay over the tax." *Dudley v. United States,* 428 F.2d 1196, 1202 (9th Cir.1970). In *White v. United States,* 372 F.2d 513, 516 (U.S.Ct. Cl.1967) the court held that the purpose "is to permit the taxing authority to reach those responsible for the corporation's failure to pay the taxes which are owing." See also *Godfrey v. United States,* 748 F.2d 1568, 1574 (Fed.Dir.1984)

The Ninth Circuit has defined the term "responsible person" for the purposes of 26 U.S.C. section 6672. In *Dudley,* at 1201, the court stated:

> the "person" responsible for the payment of the tax [is] that individual who "had the final word as to what bills should or should not be paid and when." (Citations).

In *Maggy v. United States,* 560 F.2d 1372, 1374 (9th Cir.1977), the court stated:

A "responsible person" subject to the reach of 26 U.S.C. section 6672 is one who has the final word on which bill should or should not be paid.

However, the court in *Dudley*, at 1201, tempered this definition by stating that " 'Final' means 'significant, rather than exclusive control.' " The court in *Maggy*, at 1375, also noted that "The term. 'responsible person' was held to encompass 'all those so connected with a corporation as to be responsible for the performance of the act' relating to the violation."

In the present case, it is true that Mattingly was an authorized signatory for NLV checks. However, her responsibility stopped there. Mattingly was only able to co-sign checks. She did not have the authority to issue checks on her own. The USA relies heavily on *Howard v. United States*, 711 F.2d 729 (5th Cir.1983) which held that a person who signs the checks is "responsible." *Howard* is easily distinguished. In that case, Howard was the *only* authorized signatory on the corporation account. Further, Howard had the power to fire and hire employees, he was a director and he was a minority shareholder. Mattingly's job contained none of these characteristics.

Mattingly merely performed the mechanical duties of co-signing checks already prepared by Crossley. This is not sufficient to make a person "responsible" within the meaning of section 6672. In *Geiger v. United States*, 583 F.Supp. 1166 (D.C.Ariz. 1984), the court refused to hold out the plaintiff as a "responsible person" even though the plaintiff signed the checks. The court explained that the plaintiff signed the checks "only at the behest and direction of" the corporation president and "therefore, plaintiff lacked the 'final word.' " At 1169.

In *White*, the court stated:

the courts tend to disregard the mechanical functions of the various corporate officers and instead emphasize where the ultimate authority for the decision not to pay the tax lies. At 516.

Likewise, in *Godfrey*, at 1575, the court stated: "The mechanical duties of signing checks and preparing tax returns are thus not determinative of liability under section 6672."

Finally, in *Barrett v. United States*, 217 Ct.Cl. 617, 580 F.2d 449 (1978), the court refused to find a plaintiff "responsible" where she signed checks only when authorized to do so by the company president. The court further stated: "The fact that plaintiff signed company checks is not in and of itself sufficient to justify liability under section 6672." At 580 F.2d 453.

The Government does not come forward with any evidence showing that Mattingly's duties went beyond the mere mechanical function of signing prepared checks when ordered to do so by Crossley. There are no facts which support the notion that Mattingly had any authority to determine which creditors were to be paid and which were not. It can safely be stated that Mattingly was not a "responsible person" within the meaning of section 6672. Further, it is apparent that the IRS agents and investigators should have been aware of this from early in the administrative process. A simple inquiry would have shed sufficient light on Mattingly's position to show that she was not "responsible" within the meaning of section 6672.

c. Whether Mattingly's actions constitute the "willful" failure to collect, account for and pay over to the USA NLV's withholding taxes.

Even though a person is deemed to be responsible, that person's actions must also be "willful" for section 6672 to be applicable. In *Maggy*, the court stated:

The willfulness requirement is met when a responsible officer voluntarily, consciously, and intentionally causes his corporation to pay creditors out of withheld funds while he is aware that such funds are owed to the United States. At 1375.

See also *Dudley*, at 1198; and *White*, at 521.

There is absolutely no indication from the facts before the court that Mattingly "willfully" refused to pay the taxes owed to the Government. Instead, the evidence shows that Mattingly co-signed a check for

90% of NLV's tax liability on December 10, 1980. This is hardly proof that Mattingly favored other creditors over the USA. Further, it would be patently unfair to hold Mattingly responsible for any amount to paid later given that she was fired on December 10, 1980.

The Government makes the absurd argument that Mattingly had an option: she could have simply refused to sign the December 10, 1980 check because it did not reflect the total amount of NLV's tax liability. This is outrageous. It places the taxpayer in a Catch–22 position. If indeed Mattingly was the "responsible" person that the Government claims she was then no doubt her failure to sign the check would be viewed as a willful failure to collect and pay over the taxes. The Government should not be allowed to speak out of both sides of its mouth. Further, its reliance upon *Howard* for this argument is ill-founded.

### d. Conclusion as to Government's position.

■ In order for the Government to utilize section 6672 it must be shown that Mattingly was both a responsible person and that she willfully failed to collect and pay over NLV's withholding taxes. Even in the light most favorable to the Government, this court finds that the evidence severely fails to prove either of these allegations. The evidence is so lacking that it does not even create a reasonable belief of such assertions.

This court finds that at no time, including at the administrative level and the litigation level, was the Government's position ever substantially justified. Mattingly's position as co-signatory was known at all times. There is little, if any, doubt that she did not exercise any authority in determining which creditors, including the IRS, were to be paid. Further, it is obvious from her signature on the December 10, 1980 check itself that Mattingly did not willfully prevent payment to the IRS. These facts were easily discernible at the administrative level. The fact, too, that the Government, after commencing litigation, failed to conduct any discovery which

might have led to a faster disposition of the case is more evidence that the Government did not act in a reasonable manner. The Government's position in this case was not "substantially justified."

### B. ATTORNEYS' FEES AND COSTS

■ The Government has failed to meet its burden showing that it was substantially justified in the civil proceeding. Therefore, it is appropriate for this court to award proper attorneys' fees and costs. There are two considerations to be made to determine the exact amount of the award. First, from what point should the time of plaintiff's attorney be compensated, and second, at what rate should plaintiff's attorney be compensated.

Section 7430(a) allows for the award of reasonable litigation costs incurred in any "civil proceeding." In *Sliwa*, at 607, the court stated:

It is clear that only "litigation costs," that is, only those costs and fees actually incurred in and after preparing and filing the petition in the tax court, may be recovered under the statute.

In the case at bar, the ruling in *Sliwa* would entitle Mattingly to those fees and costs incurred in and after preparing and filing the September 17, 1987 complaint.

As to the rate of compensation, subsection (c)(1) defines reasonable litigation costs. These include reasonable court costs, and reasonable attorneys' fees not exceeding a rate of $75.00 per hour unless "the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate."

Mattingly makes two arguments in an attempt to go above the $75.00 cap imposed by the statute. First, Mattingly contends that there has been a cost of living increase since the enactment of section 7430. Mattingly argues that the Consumer Price Index has increased 8.8% from 1985 to May 1988. If this rate is strictly applied, the $75.00 statutory rate would increase to $81.60. The Government offers no evi-

dence to refute this argument. This court finds it to be sound and reasonable.

Mattingly next argues that special factors exist which justify a higher rate than $75.00 per hour. The United States Supreme Court has addressed this issue in the context of the Equal Access to Justice Act, 28 U.S.C. section 2412(d) which is virtually identical to the guidelines set out in section 7430. In *Pierce v. Underwood*, 487 U.S. ——, ——, 108 S.Ct. 2541, 2554, 101 L.Ed.2d 490, 509 (1988), the Court defined the term "special factor."

> We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question —as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language. Where such qualifications are necessary and can be obtained only at rates in excess of the $75 cap, reimbursement above that limit is allowed.

The Court went further to explain what is *not* to be considered as a special factor. This list included "limited availability," "novelty and difficulty of issues," "the undesireability of the case," the "work and ability of counsel," "the results obtained," and "customary fees and awards in other cases." The Court stated that it was an "abuse for the district court to rely on these factors." 487 U.S. at ——, 108 S.Ct. at 2554, 101 L.Ed.2d at 509.

Mattingly's counsel have submitted affidavits stating that they are specially trained in the field of tax law and that their practice mostly involves tax matters, tax litigation and commercial litigation. See Doc. No. 15, Exs. P and Y. The Government responds to this position by noting that in one case being a tax attorney was not sufficient to overcome the statutory limit. In *Stieha v. C.I.R.*, 89 T.C. 784 (1987), the petitioners listed as special factors (1) their normal billing rate, (2) the limited availability of tax counsel in Reno, Nevada and (3) the lack of familiarity of tax practitioners in the area with partner-

ship audit procedures. The court responded:

> We presume that congress was aware that the prevailing hourly rates for tax attorneys in metropolitan areas normally exceed $75.00. Consequently, there must be a showing of "special" circumstances warranting a higher award. We find that petitioners have not shown that any special factor justifies a higher rate in this case.

Drawing from the holdings of *Pierce* and *Stieha*, Mattingly has failed to come forward with sufficient evidence to prove that special factors exist. The award of attorney's fees will be increased based upon the undisputed cost of living increase. This makes the appropriate billing rate $81.60, which is to be applied to those fees and costs incurred in and after the preparation and filing of the September 17, 1987 complaint. This court notes that counsel for Mattingly have submitted accounting figures of fees and costs. See Doc. No. 19, Ex. C. From this exhibit, it is reasonable to award all attorneys' fees from September 1, 1987 up to the submission of this motion. However, some further figures are required. For the time period July 7, 1988 to October 5, 1988, Mattingly's counsel have simply submitted lump sum figures. This court will require that the actual hours worked during this period be multiplied by $81.60 so that the appropriate amount can be assessed.

## C. SANCTIONS

 Rule 11 was recently amended in 1983. *Zaldivar v. City of Los Angeles*, 780 F.2d 823 (9th Cir.1986) is the leading decision on Rule 11 sanctions in this Circuit. The court stated the intent of the amended Rule.

> The Advisory Committee notes make clear that Rule 11, as amended, is intended to be applied by district courts vigorously to curb widely acknowledged abuse from the filing of frivolous pleadings, and other papers. At 829.

Fed.R.Civ.P. 11 requires that an attorney, signing any motion in federal court, warrant that the motion is well grounded in

fact, that it is warranted by existing law or a good faith argument for an extension, modification or reversal of existing law, and that it is not filed for an improper purpose. The court in *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531 (9th Cir.1986) explained the burden placed upon attorneys.

> The new rule was designed to create an affirmative duty of investigation both as to law and as to fact before motions are filed. It creates an objective standard of "reasonableness under the circumstances." This was intended to be a standard "more stringent than the original good faith formula" so "that a greater range of circumstances will trigger its violation."

In the instant case, the Government had all of the information that it needed long before the initial law suit was filed. The Government was well aware of Mattingly's position, the date that she was fired, her signature on the December 10, 1980 check and the applicable law. Even a cursory review of the file would have at the least caused the Government to investigate further before it filed its counterclaim. The facts and the law are clear that Mattingly was neither a responsible person, nor did her actions constitute willful failure to pay the taxes. This is further evidenced by the fact that the Government conceded the case without conducting *any* discovery.

Although Rule 11 sanctions are normally in the form of attorneys' fees and costs, the district court is left with wide discretion in choosing an "appropriate" sanction. Fines imposed against one who violates Rule 11 are proper sanctions in pursuing the objectives of the Rule. *Donaldson v. Clark*, 819 F.2d 1551, 1557 (11th Cir.1987). When fines are imposed procedural due process safeguards of notice and an opportunity to be heard are required. *Donaldson* and *Tom Growney Equip. v. Shelley Irr. Development*, 834 F.2d 833, 835 (9th Cir.1987). This court finds that both of these requirements have been sufficiently met. The Government was put on notice of the possibility of sanctions by way of Mattingly's motion and the Government was given a complete opportunity to respond to the motion in writing. Further, this court is intimately aware of the facts surrounding this case.

The district court can also publicly reprimand counsel as a sanction for violating Rule 11. *United States v. Minisee*, 113 F.R.D. 121, 123 (S.D.Ohio 1986). The actions of the Government's attorney in pursuing this action were simply outrageous. The Government's counterclaim was the epitomy of a frivolous claim. No competent attorney, after a reasonable inquiry into the facts and existing law, would have pursued a collection action against Mattingly. *Zaldivar* at 830.

In light of the standards set out in *Zaldivar* and *Golden Eagle*, and that the Government has been provided sufficient due process, this court finds no basis in fact or law for the counterclaim brought against Mattingly. "Vigorous" application of Rule 11 cries out that sanctions be imposed against the Government.

### ORDERS

In light of the above discussion this court orders that the United States Government:

1. Pay to Plaintiff all attorneys' fees, at the rate of $81.60 per hour, and legal costs incurred in and after the preparing and filing of the Plaintiff's September 17, 1987 complaint. Plaintiff's counsel are to prepare a schedule of all attorneys' hours worked on this case as of September 1, 1987 up to the present, and a schedule of litigation related costs. This amount will be assessed against the Government.

2. Pay to the Clerk of the United States District Court—District of Nevada the amount of $ *1,000* as Rule 11 sanctions, which this court finds appropriate in pursuing the objective of preventing frivolous litigation.

This court further publicly reprimands the Government's attorney for the blatant violation of Rule 11. To enunciate this reprimand, this order will be published.