MARY O'GORMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
O'Gorman v. Commissioner
Docket No. 38062-87
United States Tax Court
T.C. Memo 1990-73; 1990 Tax Ct. Memo LEXIS 71; 58 T.C.M. (CCH) 1403; T.C.M. (RIA) 90073; February 14, 1990
Robert W. Taylor, for the petitioner. Gail Campbell and Paulette Segal, for the respondent. WHALEN
MEMORANDUM FINDINGS OF FACT AND OPINION WHALEN, Judge: This case is before the Court to decide petitioner's motion for litigation costs. The sole issue is whether petitioner is entitled to an award of litigation costs under section 7430 of the Internal Revenue Code. All section references made herein are to the Internal Revenue Code, as amended. FINDINGS OF FACT Our findings of fact are based on the pleadings, petitioner's Motion for Litigation Costs, and respondent's objection thereto. Neither party requested an evidentiary hearing, and we see nothing in petitioner's motion or respondent's objection thereto that necessitates *73 one. See Rule 232(a)(3), Tax Court Rules of Practice and Procedure.
Respondent's agents obtained information in the form of a computer-generated report, entitled "TY 84 Underreporter Transcript," suggesting that petitioner had failed to report certain income on her 1984 Federal income tax return. Accordingly, on November 12, 1986, respondent issued a "30-day letter" proposing to increase petitioner's gross income for that year in the aggregate amount of $ 5,367. This is the sum of two items of income listed in the 30-day letter as paid to petitioner during 1984 by Bankers Trust Company, $ 3,143 and $ 2,224. The 30-day letter lists a third item of income, $ 26,340, from Bankers Trust Company during 1984, but it treats such amount as fully reported on petitioner's return. On January 19, 1987, petitioner's attorney, Mr. Robert W. Taylor, corresponded with respondent's New York office. His letter explains the first item, "gross pension or annuity income of $ 3,143," as follows: The above item is indicated as being reported on Form W-2-P. No such form was received. The taxpayer reported on W-2, earnings of $ 3,196.43 from Bankers' Trust - which must be the item in question. *74 Mr. Taylor's letter explains the second item, $ 2,224 from Bankers Trust Company, as "a distribution on severance of employment" and states that such amount was reported on Schedule D of petitioner's 1984 return. His letter further states that the third item, $ 26,340, was reported on petitioner's 1984 return to the extent of $ 1,835.49, and the balance, $ 24,504, was rolled-over into a retirement account in Merrill Lynch. In support of these explanations, Mr. Taylor enclosed: (1) Form W-2 from Bankers Trust Company showing $ 3,196.43 of taxable wages on which $ 1,177.65 of Federal tax was withheld; (2) Form 1099R from Bankers Trust Company showing $ 2,224.11 of capital gain, arising from a distribution of $ 4,802.65 less petitioner's contribution of $ 2,578.54; and, (3) Statement of Retirement Account from Merrill Lynch, showing that a rollover deposit of $ 24,504.39 was made in the year 1984. On September 16, 1987, respondent issued a notice of deficiency to petitioner in which he increased petitioner's income in the amount of $ 3,143, the first item of income mentioned above. On the basis of that adjustment, he determined a deficiency of $ 1,902 in petitioner's 1984 Federal *75 income tax. In his notice, respondent also determined an addition to tax under section 6653(a)(1) in the amount of $ 110.80, and an addition to tax under section 6653(a)(2) equal to 50 percent of the interest payable under section 6601 on $ 1,509, the portion of the underpayment respondent determined to be attributable to negligence. On November 13, 1987, Mr. Taylor sent a letter to respondent stating that petitioner had not received a Form W-2P from Bankers Trust Company for the year 1984, nor had she received any information from the company regarding the distribution of $ 3,143.98. However, Mr. Taylor stated that, upon his inquiry, the company forwarded information to him showing that it had distributed $ 3,143.98 to petitioner during 1984 from its Savings Incentive Plan. Mr. Taylor's letter notes that after such amount was reduced by petitioner's contribution of $ 2,422.50, petitioner had received a net distribution of $ 721.48. In effect, petitioner's attorney acknowledged in his letter of November 13, 1987, that the taxable income reported on petitioner's 1984 tax return was understated by $ 721.48. After taking into account the tax withheld on such amount, $ 314, Mr. *76 Taylor computed additional tax of $ 14.00 for the year due to such understatement. Nevertheless, Mr. Taylor suggested that the notice of deficiency be "rescinded" and petitioner's 1984 return be accepted as filed because the distribution was made upon termination of petitioner's employment and the unreported amount qualified as long-term capital gain, subject to a 60-percent reduction. On December 4, 1987, twenty-one days after Mr. Taylor's letter, petitioner filed her petition with the Court. She resided in New York, New York, at that time. Respondent filed a timely answer denying petitioner's allegations generally, and on March 3, 1988, respondent's administrative file concerning the case was forwarded to the Appeals Division. On August 8, 1988, the Court issued a notice to the parties scheduling the case for trial during our January 9, 1989, trial session in New York, New York. After receiving the notice, Mr. Taylor telephoned respondent's attorney on several occasions to request a settlement conference. He also wrote a letter to District Counsel's office, dated August 30, 1988, proposing settlement discussions and recommending transfer of the case to the Appeals Division. *77 On the same day, Mr. Taylor was contacted by an appeals officer. The appeals officer requested petitioner's 1981 Federal income tax return to verify that petitioner had not deducted her contribution to the Bankers Trust Company Savings Incentive Plan in 1981. On August 31, 1988, Mr. Taylor sent a copy of petitioner's 1981 tax return, along with several other documents, to the appeals officer. Thereafter, on October 12, 1988, the appeals officer sent a proposed decision document to Mr. Taylor, who promptly signed and returned it. The proposed decision document showed no deficiency in petitioner's 1984 Federal income tax. Respondent's administrative file containing the executed decision document was then sent back to District Counsel's office on December 13, 1988. On December 28, 1988, Assistant District Counsel sent a revised decision document to Mr. Taylor for execution because the first one failed to account for the additions to tax under section 6653(a)(1) and (a)(2). Mr. Taylor again promptly signed and returned the document to District Counsel's office. The revised decision document, showing no deficiency in, or additions to, petitioner's 1984 Federal income tax, was submitted *78 to the Court on January 9, 1989, and decision was entered by the Court on January 26, 1989. After petitioner filed the subject motion for litigation costs, we vacated our decision and ordered respondent to file a response. OPINION Section 7430(a) authorizes the Court to award reasonable litigation costs to taxpayers who prevail against the government in civil tax litigation. This provision was originally enacted in 1982 and has been amended twice. [1] The version of the provision applicable in this case is the one following amendment by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085. It provided as follows: SEC. 7430. AWARDING OF COURT COSTS AND CERTAIN FEES. *79 (a) IN GENERAL. -- In the case of any civil proceeding which is -- (1) brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, and (2) brought in a court of the United States (including the Tax Court and the United States Claims Court), the prevailing party may be awarded a judgment (payable in the case of the Tax Court in the same manner as such an award by a district court) for reasonable litigation costs incurred in such proceeding. (b) LIMITATIONS. -- (1) REQUIREMENT THAT ADMINISTRATIVE REMEDIES BE EXHAUSTED. -- A judgment for reasonable litigation costs shall not be awarded under subsection (a) unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service. * * * (4) COSTS DENIED WHERE PARTY PREVAILING PROTRACTS PROCEEDINGS. -- No award for reasonable litigation costs may be made under subsection (a) with respect to any portion of the civil proceeding during which the prevailing party has unreasonably protracted such proceeding. (c) DEFINITIONS. -- For purposes of this section *80 -- (1) REASONABLE LITIGATION COSTS. -- (A) IN GENERAL. -- The term "reasonable litigation costs" includes -- (i) reasonable court costs, and (ii) based upon prevailing market rates for the kind or quality of services furnished -- * * * (III) reasonable fees paid or incurred for the services of attorneys in connection with the civil proceeding, except that such fees shall not be in excess of $ 75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate. * * * (2) PREVAILING PARTY. -- (A) IN GENERAL. -- The term "prevailing party" means any party to any proceeding described in subsection (a) (other than the United States or any creditor of the taxpayer involved) which -- (i) establishes that the position of the United States in the civil proceeding was not substantially justified, (ii) (I) has substantially prevailed with respect to the amount in controversy, or (II) has substantially prevailed with respect to the most significant issue or set of issues presented, and (iii) meets the requirements of section 504(b)(1)(B) *81 of title 5, United States Code (as in effect on the date of the enactment of the Tax Reform Act of 1986 and applied by taking into account the commencement of the proceeding described in subsection (a) in lieu of the initiation of the adjudication referred to in such section). * * * (4) POSITION OF UNITED STATES. -- The term "position of the United States" includes -- (A) the position taken by the United States in the civil proceeding, and (B) any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based. * * * To obtain an award of litigation costs under the above provision, petitioner must prove that she qualifies as the "prevailing party" within the meaning of section 7430(a). The definition of that term in section 7430(c)(2), quoted above, requires petitioner to establish that: (1) the position of the United States, respondent in this proceeding, was not substantially justified, section 7430(c)(2)(A)(i); (2) she substantially prevailed in the proceeding with respect to the amount in controversy or to the issue presented, section 7430(c)(2)(A)(ii); *82 and (3) she had a net worth of not more than $ 2 million at the commencement of the proceeding, section 7430(c)(2)(A)(iii). Petitioner must also show that she exhausted the administrative remedies available to her within the Internal Revenue Service, section 7430(b)(1), and that she did not unreasonably protract the civil proceeding, section 7430(b)(4). Respondent concedes that petitioner substantially prevailed, that she exhausted her administrative remedies, and that she did not unreasonably protract the proceeding. Respondent, however, contends that his position was substantially justified. He also contends that petitioner failed to prove that her net worth did not exceed $ 2 million when she filed the petition. Finally, he contends that the attorney's fees claimed by petitioner, based upon a billing rate of $ 100 per hour, are unreasonable under section 7430(c)(1). We agree with respondent that his position was substantially justified within the meaning of section 7430(c)(2)(A)(i). Therefore, we do not reach the other issues raised. The Code does not define the term "substantially justified," but this Court interprets the phrase to require application of a reasonableness *83 standard. Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988); Rutana v. Commissioner, 88 T.C. 1329, 1333 (1987). The burden of proof is on the taxpayer to prove that respondent's position was unreasonable. Rule 232(e), Tax Court Rules of Practice and Procedure.
To determine whether respondent's position was "substantially justified," we must look not only to respondent's position in court but also to "any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based." Sec. 7430(c)(4). In our view, for purposes of section 7430, respondent's administrative action or inaction begins when his District Counsel becomes involved in the proceeding. Gantner v. Commissioner, 92 T.C. 192, 197 (1989); Egan v. Commissioner, 91 T.C. 705, 712 (1988); Sher v. Commissioner, 89 T.C. at 86; Harris v. Commissioner, T.C. Memo. 1988-229. Otherwise, the phrase "by the District Counsel," added by the Tax Reform Act of 1986, supra, would *84 be written out of the definition of "position of United States" contained in section 7430(c)(4). [2] Our view is consistent with the report of the Joint Committee on Taxation, which states: the "substantially justified" standard is applicable to prelitigation actions or inaction of the District Counsel of the IRS (as well as all subsequent administrative action of inaction), as well as the litigation position of the Government. Prelitigation actions or inaction by the IRS prior to the involvement of District Counsel are not eligible as components of any attorney's fee award. *85 Staff of Joint Comm. on Internal Revenue Taxation, General Explanation of the Tax Reform Act of 1986, at 1300; see also Sher v. Commissioner, 861 F.2d 131, 134 (5th Cir. 1988), affg. 89 T.C. 79 (1987). We note that our view differs from that of the United States Court of Appeals for the Second Circuit, the court to which an appeal of this case lies. That court takes the view that the focus for determining the position of the United States under section 7430(c)(4) should be on the Commissioner's final position as set forth in the notice of deficiency, regardless when District Counsel becomes involved in the case. Weiss v. Commissioner, 850 F.2d 111, 115 (2d Cir. 1988), revg. and remanding 89 T.C. 779 (1987). We need not press our disagreement with the Second Circuit in this case even if we felt free to do so, and not bound by the notions of efficient and harmonious judicial administration expressed in Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). This is because it makes no difference in the *86 outcome of this case which view controls. Respondent's position was substantially justified both before and after District Counsel became involved in this proceeding. Petitioner made her first reply to respondent's 30-day letter when her attorney wrote to respondent's agent on January 19, 1987, and proffered an explanation for both of the items listed in the 30-day letter. Respondent accepted petitioner's explanation that the distribution of $ 2,224 from the pension and profit-sharing plan had been reported on petitioner's Schedule D. Respondent did not accept petitioner's explanation that the $ 3,143 shown on Form W-2P from Bankers Trust Company was the same as the wages petitioner reported from the company in the amount of $ 3,196.43. In fact, petitioner's explanation of this item was incorrect and respondent was substantially justified in not accepting it and issuing the notice of deficiency on September 16, 1987. Petitioner attempted another explanation of this item in a second letter from her attorney dated November 13, 1987. This time, she correctly explained that the amount was a distribution from the Bankers Trust Company Savings Incentive Plan. Her attorney's letter *87 enclosed a statement from Bankers Trust Company which showed that a distribution of $ 3,143.98 was made during 1984 for plan year 1981 and that petitioner had originally contributed $ 2,422.50 of the amount distributed. Petitioner's attorney acknowledged that her income for the year was understated by $ 721.48. He nevertheless recommended that respondent accept the return as filed on the ground that petitioner would be entitled to a refund of part of the tax withheld on such amount if the distribution were given capital gain treatment. Petitioner emphasizes in her motion for litigation costs that the decision document ultimately submitted by the parties reflects their agreement to dispose of the case on the basis outlined in petitioner's letter of November 13, 1987. She complains that, for one year and two months, respondent "ignored" petitioner's explanation and, as a consequence, she was forced to file the petition and press respondent for settlement of the case on the terms to which the parties finally agreed. Petitioner asserts that this history proves respondent's position to have been clearly unreasonable. We cannot accept petitioner's implicit assumption that respondent *88 was bound to accept petitioner's explanation at face value. Nor can we dismiss, as unreasonable, respondent's contention that he was required to verify that petitioner's contribution of $ 2,422.50 was made to the savings incentive plan in 1981 on an "after-tax" basis, before he accepted petitioner's second explanation contained in her attorney's letter of November 13, 1987. Respondent needed petitioner's 1981 tax return to make the verification he deemed necessary. Once petitioner provided her 1981 tax return to his agents, respondent settled the case with reasonable promptness so that the decision document could be submitted on the scheduled calendar date. We do not believe that the delay of one year and two months after petitioner's letter of November 13, 1987, proves that respondent's position was unreasonable. Some delay in the settlement process, in and of itself, does not make respondent's position unreasonable. See Sokol v. Commissioner, 92 T.C. 760, 765 (1989), and cases cited therein. This is not a case in which respondent affirmatively delayed the resolution process. Moreover, we believe that petitioner bears some responsibility for the delay. After *89 filing her petition, it appears that petitioner made no attempt to induce respondent to reach a more expeditious resolution of the case until after it was assigned to a trial calendar and both parties began discussions in earnest. In passing, we note that respondent's examination workpapers record a number of instances on which his agents asked petitioner for information to verify her explanations. An entry in the workpapers states that on August 13, 1987, before the notice of deficiency was issued, an examiner asked petitioner to substantiate her claim that the $ 3,143 was a duplication of her wages from Bankers Trust Company. Another entry in the workpapers states that on December 3, 1987, after respondent issued the notice of deficiency but before petitioner filed her petition with the Court, an agent told petitioner's attorney that the information he had sent was insufficient to resolve the case, because it did not specify whether petitioner's contribution to the incentive plan was made on a pre-tax or after-tax basis. Another entry in the workpapers states that on January 7, 1988, after petitioner filed her petition, petitioner's attorney was told that additional information *90 was needed before respondent's determination could be changed, including distribution statements for all plan years. Petitioner has neither specifically addressed the accuracy of respondent's examination workpapers nor sought to contradict the entries contained therein. In our view, respondent's position throughout all stages of the administrative and judicial consideration of petitioner's case was reasonable. To reflect the foregoing, The petitioner's motion for litigation costs will be denied. Footnotes
1. Section 7430↩ was originally enacted by the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 573, applicable to proceedings commenced after February 28, 1983. It was amended by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, effective for proceedings commenced after December 31, 1985. Finally, it was again amended by the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, effective for proceedings commenced after November 10, 1988.
2. Before section 7430 was amended by the Tax Reform Act of 1986, it did not define "position of the United States," and the courts disagreed about what should be examined in reviewing the reasonableness of the government's position. This Court and some Courts of Appeals shared the view that the position of the United States was its position in the litigation. Wickert v. Commissioner, 842 F.2d 1005, 1008 (8th Cir. 1988), affg. a Memorandum Opinion of this Court; Ewing and Thomas, P.A. v. Heye, 803 F.2d 613, 615-16 (11th Cir. 1986); Baker v. Commissioner, 787 F.2d 637, 641-42 (D.C. Cir. 1986), vacating and remanding on another issue 83 T.C. 822 (1984); United States v. Balanced Financial Management, Inc., 769 F.2d 1440, 1450 (10th Cir. 1985). Other courts required an examination of the actions of the government both before and during the litigation to determine whether such actions were unreasonable. Comer Family Trust v. Commissioner, 856 F.2d 775, 780 (6th Cir. 1988), revg. and remanding an unreported order of this Court; Sliwa v. Commissioner, 839 F.2d 602, 607 (9th Cir. 1988), affg. on other issues an unreported order of this Court; Powell v. Commissioner, 791 F.2d 385, 392 (5th Cir. 1986), revg. and remanding a Memorandum Opinion of this Court; Kaufman v. Egger, 758 F.2d 1, 4↩ (1st Cir. 1985).