CECELIA FULLAM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fullam v. Commissioner
Docket No. 12198-89
United States Tax Court
T.C. Memo 1991-536; 1991 Tax Ct. Memo LEXIS 585; 62 T.C.M. (CCH) 1096; T.C.M. (RIA) 91536; October 28, 1991, Filed *585 Petitioner's motions will be denied, and decision will be entered for the respondent. Patrick W. Hennessey, for the petitioner. Stephen Ianello, for the respondent. WHALEN, Judge. WHALEN
MEMORANDUM OPINION This case is before the Court to decide petitioner's Motion for Award of Litigation Costs and Administrative Costs. The sole issue for decision is whether petitioner is entitled to an award of administrative and litigation costs, pursuant to section 7430. All section references made herein are to the Internal Revenue Code as amended. Background This statement of facts is based on petitioner's Motion for Award of Litigation Costs and Administrative Costs, the memorandum of law submitted by petitioner in support thereof, respondent's objection to the motion, petitioner's reply to respondent's objection and the other pleadings filed by the parties. Petitioner filed her 1985 Federal income tax return claiming head of household filing status. On or about January 27, 1989, respondent mailed a "30-day letter" to petitioner, along with a report of individual income tax examination changes ("report"), in which he proposes to deny petitioner's eligibility for head of household *586 filing status and to treat her as "married filing separately." The report states that the information on which respondent based his adjustments "was derived from your state's taxing agency." The 30-day letter directs petitioner to do one of three things within 30 days if she did not agree with the findings set forth in the report: (1) Mail any additional information "you would like us to consider;" (2) request a meeting with an examiner; or (3) request a conference with an appeals officer. A questionnaire was enclosed with the 30-day letter and the report advises petitioner, "Since your filing status as head of household is being disallowed, please complete the enclosed questionnaire and return it to our office for consideration." Shortly after petitioner received the 30-day letter, she telephoned her lawyer, Patrick W. Hennessey, Esquire, and they discussed what response petitioner should make to respondent. Mr. Hennessey's description of work done for petitioner states that he spent approximately 15 minutes doing the following: Telephone conference between Petitioner and her attorney on February 5, 1989 concerning Petitioner's proper response to Respondent's [sic] letter *587 dated January 27, 1989.
Petitioner says that she completed the questionnaire and returned it to respondent as directed by the report. Respondent never received it and his administrative file contains no record of its receipt. Respondent's notice of deficiency was issued to petitioner on March 7, 1989, nine days after the deadline imposed by the 30-day letter. He determined therein that petitioner was not eligible to claim head of household filing status. He treated her as married filing separately and recomputed her 1985 tax accordingly. This change had the effect of causing petitioner to be subject to higher tax rates, it reduced the zero bracket amount applicable to petitioner's return and, as a consequence, it increased petitioner's itemized deductions and finally it caused respondent to disallow the child care credit which petitioner had claimed. Based on these adjustments, respondent determined a deficiency of $ 1,575 in petitioner's 1985 Federal income tax. After receiving respondent's notice, petitioner's attorney wrote to the Internal Revenue Service at Fresno, California, on April 21, 1989. His letter acknowledges receipt of the notice and further states as *588 follows: My client is unmarried (divorced) and was so on the last day of the taxable year in question. She furnished over half of the total cost of maintaining the household for her two children for that entire year. She also claimed those two children as dependents on her income tax return for that year. The fact that she is a Head of Household should have been obvious from her income tax return. Nothing in your 90-day Letter challenges any of the information contained on her 1985 income tax return.
Mr. Hennessey's letter states his opinion that the notice is "deficient" because it does not set forth any reason to disallow petitioner's eligibility for head of household status, and Mr. Hennessey's letter asks respondent to "rescind" the notice by May 24, 1989, in order to eliminate the need for filing a petition with this Court. Petitioner's attorney received no reply to his letter and he filed a timely petition with this Court on petitioner's behalf. Petitioner resided in Annapolis, Maryland, at that time. The petition contained the following allegations: The Respondent first notified the Petitioner of the proposed assessment set forth herein in a "30-day Letter" *589 dated January 27, 1989. * * * The time for responding to this 30-day Letter would have ended on February 26, 1989. On Page 3 of the attachment to said 30-day Letter, the Petitioner was asked to fill out a questionnaire to determine her qualification to claim Head of Household status. She filled the questionnaire out and returned it to the Internal Revenue Service in the envelope provided prior to February 26, 1989. * * * The Petitioner was effectively given no consideration at the administrative level. She did what she could by filling out and returning the questionnaire sent within the 30-day period and by requesting that her attorney contact the IRS by telephone and writing in ample time for the IRS to change its position.
Respondent's answer to the petition denies the allegations of petitioner's eligibility for head of household filing status. Respondent's answer also denies the allegations, quoted above, that petitioner completed and returned the questionnaire which was attached to the 30-day letter. Respondent denied the latter allegations "for lack of knowledge." After respondent's answer was filed, no activity took place with respect to this matter until October *590 31, 1989, when respondent's administrative file concerning the case was forwarded to the Appeals Division. On January 3, 1990, the Court issued its Notice Setting Case for Trial in which the parties were notified that the case would be tried in New York City during the trial session beginning on June 4, 1990. Sometime after October 31, 1989, the Appeals Officer to whom the case was assigned, Mr. Langston Upshur, reviewed the administrative file and engaged in a number of telephone conversations with Mr. Hennessey. Based upon those telephone conversations, Mr. Upshur concluded that petitioner was entitled to head of household filing status. On February 22, 1990, Mr. Upshur forwarded decision documents to petitioner which contemplated respondent's full concession of the deficiency determined in the notice of deficiency. The parties recast the decision documents into a stipulation of settlement in order to conform to the requirements of Rule 231(c), Tax Court Rules of Practice and Procedure. Respondent forwarded the stipulation of settlement to petitioner's counsel on May 17, 1990. The parties executed the stipulation of settlement and filed it with the Court on June 4, 1990, *591 at the call of the calendar. The stipulation of settlement showed no deficiency in or additions to petitioner's 1985 Federal income tax. At the calendar call, petitioner also filed her motion for administrative and litigation costs. The motion seeks an award of attorney's fees and costs in the aggregate amount of $ 3,022.90 for 27.25 hours of "litigation time" at an hourly rate of $ 100 per hour and for 2.5 hours of "administrative time" at an hourly rate of $ 87.50 per hour and for $ 79.15 of disbursements. The Court set petitioner's motion for litigation costs for hearing on June 18. On June 8, 1990, the parties advised the Court that respondent did not intend to pursue his contention that petitioner had failed to exhaust her administrative remedies by failing to respond to the 30-day letter. Both parties asked the Court to render its decision on this matter without a hearing. Accordingly, the Court directed petitioner to file a memorandum of law in support of her motion and directed respondent to file his objection to petitioner's motion, including the points and authorities in support of his position. In his objection, respondent alleges that his administrative file in *592 this case does not show that "any documentation was received from petitioner prior to the issuance of the notice of deficiency on March 7, 1989." Respondent further alleges that the questionnaire, which petitioner claims to have submitted, was not in the administrative file at the time respondent filed his answer or when the case was considered by the appeals officer. In support of those allegations, respondent attached to his objection affidavits from the two docket attorneys who had responsibility for the case and an affidavit from the appeals officer, Mr. Upshur, who concluded that the matter should be conceded. Petitioner interprets respondent's allegations, described above, to be contrary to a "stipulation" made orally by the parties during the conference call with the Court "that the questionnaire was filed on or before February 26, 1989." Petitioner filed a motion to strike those portions of respondent's objection which allege "that petitioner did not file a certain questionnaire" and the affidavits in support thereof. Petitioner's motion to strike is also pending. Discussion Section 7430(a) authorizes the Court to award reasonable administrative costs and reasonable litigation *593 costs to taxpayers who prevail against the government in civil tax litigation. This provision was originally enacted in 1982 by the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 572-573, applicable to proceedings commenced after February 28, 1983. It was amended by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, effective for proceedings commenced after December 31, 1985. Finally, it was again amended by the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, 102 Stat. 3342, effective for proceedings commenced after November 10, 1988. The TAMRA amendments to section 7430 apply to this case. To obtain an award of litigation costs under the above provision, petitioner must prove that she qualifies as the "prevailing party" within the meaning of section 7430(a). The definition of that term in section 7430(c)(4) requires petitioner to establish that: (1) The position of the United States was not substantially justified, section 7430(c)(4)(A)(i); (2) she substantially prevailed in the proceeding with respect to the amount in controversy or with respect to the issues presented, section 7430(c)(4)(A)(ii); and (3) she *594 had a net worth of not more than $ 2 million at the commencement of the proceeding, section 7430(c)(4)(A)(iii). Petitioner must also show that she had exhausted the administrative remedies available to her within the Internal Revenue Service, section 7430(b)(1), and that she did not unreasonably protract the civil proceeding, section 7430(b)(4). See Rule 232(e) of the Tax Court Rules of Practice and Procedure.
In this case, respondent concedes that petitioner substantially prevailed, that she had a net worth of not more than $ 2 million at the commencement of the proceeding, and that she did not unreasonably protract the proceeding. Initially, respondent argued that petitioner had not exhausted her administrative remedies based upon his contention that she had not responded to his 30-day letter. Respondent withdrew that argument and now concedes that petitioner met that requirement. Respondent's present argument, that petitioner is not entitled to administrative or litigation costs, is based upon his contention that he was substantially justified when he took the position that petitioner was not entitled to head of household status and that petitioner has not established otherwise, *595 as required by section 7430(c)(4)(A)(i). Respondent also contends that the attorney's fees claimed by petitioner, based upon a billing rate of $ 100 per hour for litigation time and $ 87.50 per hour for administrative time, are unreasonable under section 7430(c)(1) and (2). We agree with respondent that petitioner has not established that his position was not substantially justified within the meaning of section 7430(c)(4)(A)(i). Therefore, we do not reach the issue of the reasonableness of the billing rates used by petitioner's attorney. The Code does not define the term "substantially justified," but this Court interprets the phrase to require the application of a reasonableness standard. Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988); Rutana v. Commissioner, 88 T.C. 1329, 1333 (1987). Petitioner has the burden of proving that respondent's position was unreasonable. Rule 232(e), Tax Court Rules of Practice and Procedure. To meet this burden, petitioner must show that legal precedent does not substantially support the government's position given the facts available to respondent. See *596 Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 688 (1990); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). To determine whether respondent's position was "substantially justified," we must look not only to respondent's position in court but also to his position in any administrative proceedings, as of the earlier of (1) the date petitioner receives the notice of the decision of the Internal Revenue Service Office of Appeals, or (2) the date of the notice of deficiency. Section 7430(c)(7). In this case, no appeals office considered petitioner's eligibility for head of household status prior to the date of the notice of deficiency. Therefore, for purposes of section 7430(c)(7), the position of the United States in the administrative proceeding is the position which respondent took in the notice of deficiency. According to the notice, petitioner was not eligible to be treated as the head of a household, based upon information received from a State taxing agency. Respondent took the same position in the judicial proceedings before this Court. Petitioner's motion for award of litigation and administrative costs and her memorandum *597 of law both advance her contention that respondent was not substantially justified within the meaning of section 7430(c)(4)(A)(i) in taking that position. However, both documents merely recite certain facts. They fail to detail the basis for petitioner's contention that respondent's position was unreasonable. In effect, petitioner's argument seems to be that respondent's position is shown to be unreasonable by the fact that he later abandoned it. We have rejected that argument in prior cases. Wasie v. Commissioner, 86 T.C. 962, 968-969 (1986); Baker v. Commissioner, 83 T.C. 822, 828 (1984), vacated and remanded on other grounds 787 F.2d 637 (D.C. Cir. 1986); Spirtis v. Commissioner, T.C. Memo 1985-44. We reject it again here. The fact that respondent abandons a position does not prove that he acted unreasonably by raising it or that the position itself was unreasonable. See Coastal Petroleum Refiners, Inc. v. Commissioner, supra at 689. One point which petitioner makes both in her motion and in her memorandum is the fact that respondent's 30-day letter was issued shortly before *598 the expiration of the 3-year period of limitations on assessments under section 6501(a). Petitioner complains that she had "no opportunity to air her differences with the IRS at the administrative level and she was forced to file the Petition to prevent the assessment of a deficiency." Petitioner infers that "respondent had no intention of allowing any responsible administrative proceedings prior to the issuance of the notice of deficiency." We disagree that the inference drawn by petitioner is a valid inference, and we disagree with her tacit contention that respondent's position was unreasonable because it was raised shortly before the expiration of the period of limitations. Respondent faces the administrative burden of auditing all returns filed for a particular year and determining deficiencies within three years after the returns are filed. The fact that respondent issues a 30-day letter shortly before expiration of the 3-year period of limitations does not make respondent's position unreasonable, and we reject the suggestion that we should hold respondent to a shorter time in which to determine a deficiency than the period of limitations on assessments set forth in section *599 6501. Petitioner also takes issue with the statement contained in both the 30-day letter and the notice of deficiency that the "information on which we based our adjustments was derived from your state's taxing agency." Petitioner asserts that "no such information ever existed," and she argues, based upon that assertion, that respondent's position was not substantially justified. However, petitioner's assertion appears to be based on the further assertion that "Respondent has yet to produce this 'information' because it does not exist." We note that petitioner could have formally requested respondent to produce the information in this proceeding but failed to do so. There is nothing in the record of this case to support petitioner's assertion that the "information" referred to by respondent "does not exist." In effect, petitioner appears to have lost sight of the fact that she bears the burden of proving that respondent's position was unreasonable; respondent is not required to show that his position is reasonable. Rule 232(e), Tax Court Rules of Practice and Procedure.
Petitioner claims to have responded to the 30-day letter by returning the questionnaire as instructed in the *600 report and she alleges that "Respondent did not review the Petitioner's filled-in questionnaire prior to mailing the Notice of Deficiency." Petitioner appears to contend that respondent's position in the notice, that she was not eligible for head of household status, could not reasonably be taken in light of the completed questionnaire. However, the questionnaire is not contained in the record of this case, and we have no other basis from which to judge whether the completed questionnaire proves respondent's position to have been unreasonable. In passing, we note the dispute between the parties over respondent's allegations that a completed questionnaire was not in respondent's administrative file and that his administrative file contains no indication that the questionnaire was ever received from petitioner. Petitioner argues that those allegations should be struck from respondent's objection on the ground that they are contrary to an oral "stipulation" made by the parties on June 8, 1990, "that the questionnaire was filed [by petitioner] on or before February 26, 1989." We do not agree with petitioner about the nature of respondent's oral stipulation. Initially, respondent *601 denied the allegations in the petition that petitioner "filled the questionnaire out and returned it to the Internal Revenue Service," and argued that petitioner had failed to exhaust her administrative remedies. The Court set that matter for hearing. Prior to the hearing, respondent withdrew his argument that petitioner had failed to exhaust her administrative remedies. However, he did not stipulate thereby that he had received the questionnaire. Indeed, there are facts in the record which suggest that petitioner did not send the questionnaire to respondent. For example, petitioner consulted her attorney when she received the 30-day letter, but his statement of work done does not mention the preparation or filing of the questionnaire. Similarly, a copy of the completed questionnaire was not introduced into the record of this proceeding. In any event, respondent's concession that petitioner had exhausted her administrative remedies only dispensed with the need for the Court to consider whether petitioner had exhausted her administrative remedies. It did not establish that respondent had received the subject questionnaire, nor did it establish the manner in which petitioner *602 completed it. In any event, respondent's position was based upon a factual determination that petitioner was ineligible to be treated as the head of household. Respondent is not obliged to concede such a position until he receives the necessary documentation to prove petitioner's contention. Brice v. Commissioner, T.C. Memo 1990-355, affd. without published opinion 940 F.2d 667 (9th Cir. 1991); cf. Currie v. Commissioner, T.C. Memo 1989-23. Petitioner has not proved that respondent had sufficient information to concede his position before the discussions between Mr. Upshur and petitioner's attorney. The letter sent by petitioner's attorney in response to the notice of deficiency did nothing more than state that his client qualified for head of household status and request respondent to rescind the notice of deficiency. Respondent is not bound to accept petitioner's tax return or explanation at face value. See O'Gorman v. Commissioner, T.C. Memo 1990-73. Moreover, this is not a case in which respondent adopted an inflexible attitude concerning settlement or attempted in an unfair manner to cause petitioner *603 to concede her case. See Frisch v. Commissioner, 87 T.C. 838, 841 (1986). Similarly, petitioner has not shown that respondent advanced a position which he knew to be factually or legally incorrect. See Stieha v. Commissioner, 89 T.C. 784, 791 (1987). Furthermore, petitioner has not proved that respondent pursued his positions for purposes of harassment or embarrassment, or out of political motivation, or for any other improper purpose. See Gantner v. Commissioner, 92 T.C. 192, 197-198 (1989), affd. 905 F.2d 241 (8th Cir. 1990); Sher v. Commissioner, 89 T.C. 79, 84-85 (1987), affd. 861 F.2d 131 (5th Cir. 1988). In summary, it appears that the notice of deficiency in this case grew out of information respondent received from a State taxing authority which caused him to deny petitioner's claim to be eligible for head of household filing status. Petitioner did not prove that respondent acted unreasonably in the administrative proceedings by issuing the notice of deficiency. Petitioner has also failed to prove that respondent's position in these judicial proceedings was *604 unreasonable. Based upon the record in this case, we cannot find that respondent should have conceded petitioner's eligibility for head of household status prior to the discussions between Mr. Upshur, the appeals officer, and petitioner's attorney which took place between October 31, 1989 and February 22, 1990. Accordingly, we cannot find that the position of the United States in this proceeding was not substantially justified. To reflect the foregoing, Petitioner's motions will be denied, and decision will be entered for the respondent.