JOHN F. AND MARY E. MORROW, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Morrow v. Commissioner
Docket No. 27545-92
United States Tax Court
T.C. Memo 1995-18; 1995 Tax Ct. Memo LEXIS 18; 69 T.C.M. (CCH) 1669; January 17, 1995, Filed *18 For petitioners: David L. Blender. For respondent: Ursula Gee and Donna F. Herbert. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: This matter is before the Court on petitioners' Motion for Legal Fees and Costs under section 7430 and Rule 231. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the matter under consideration, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners John F. and Mary E. Morrow [1] resided in Woodland Hills, California, at the time they filed their petition in this case. Background
*19 In 1988 petitioner was an employee of Applause, Inc. (Applause). In May 1988, Avalon Marketing, Inc. (Avalon) acquired all the issued and outstanding shares of Applause. Avalon was a privately held corporation that designed, marketed, and distributed consumer products. Following the acquisition, Avalon changed its name to Avalon/Applause, Inc. (Avalon/Applause). Petitioner was not an Applause shareholder at the time of the acquisition. After the acquisition, petitioner continued his employment with Avalon/Applause as a vice president. During this time, he entered into an employment arrangement that provided the following compensation package: (1) A base salary of $ 120,266, payable in 26 biweekly installments; (2) a $ 438,080 cash payment; and (3) 8,000 shares of nonvoting, class B common stock of Avalon/Applause. The nonvoting shares that petitioner received were subject to the terms of a Stock Transfer Restriction Agreement (the Agreement) dated May 27, 1988. [2]
*20 As of June 30, 1988, a total of 2,000,000 Avalon/Applause shares were issued and outstanding, consisting of 1,000,000 class A common voting shares and 1,000,000 class B common nonvoting shares. During 1988, Avalon/Applause shares were privately held and not sold on public markets. In January 1991, petitioner ended his employment with Avalon/Applause. He sold his 8,000 nonvoting shares in 1992. Petitioners' 1988 Federal Income Tax Return
Petitioner received a Form W-2 from Avalon/Applause for 1988 that reported $ 675,871 of income. This amount included the $ 438,080 cash payment; the remaining $ 237,791 represented the value that Avalon/Applause ascribed to the 8,000 class B nonvoting shares that petitioner received. On petitioners' 1988 Federal income tax return, petitioners decreased the amount stated on the Avalon/Applause Form W-2, by $ 110,000 to take into account a 46-percent minority stock discount and reduced their reported taxable income accordingly. Petitioners did not provide any explanation as to how the stock discount was calculated. In addition, petitioner reported $ 232,964 of income from Applause on petitioners' 1988 return. This $ 232,964 consisted *21 of salaries of $ 120,266 and bonuses of $ 112,698. Petitioners' Amended 1988 Federal Income Tax Return
Petitioners filed an amended 1988 Federal income tax return in April 1992. On their amended return, petitioners recalculated the value of the Avalon/Applause stock that petitioner received, taking an additional 24-percent minority discount of $ 57,291. [3] Petitioners then claimed a $ 16,941 refund, based on the position that they had overvalued the Avalon/Applause stock petitioner received in 1988. *22 Administrative Proceedings
In 1990, the Commissioner began the examination of petitioners' 1988 Federal income tax return. As a result of the parties' inability to settle, in April 1991 the matter was transferred to the Glendale, California, Appeals Office, and Appeals Officer Fredric Fenton was assigned to the case. At issue was the propriety of the minority stock discount that petitioners took with respect to the Avalon/Applause stock that petitioner received as part of his 1988 employment compensation package. [4]
Because the parties could not reach a settlement, on approximately September 23, 1992, Fenton closed the case and recommended that a notice of deficiency be issued. Fenton based his recommendation on the following: (1) The administrative file lacked any evidence suggesting that petitioner challenged the stock value stated on the Form W-2 (other than claiming the discounts on petitioners' *23 returns); (2) contrary to petitioners' assertion that there was no market for the stock, the Agreement gave petitioner the right to sell the stock to other shareholders; (3) petitioners never properly appraised the value of the stock in claiming the $ 110,000 and $ 57,291 discounts; (4) petitioner could have refused to accept the stock; (5) section 83 [5] was inapplicable to restrict the inclusion of the stock in income; (6) petitioners were not only advocating that a substantial discount should be applied, but were also asserting that the stock value was lower than reported by Avalon/Applause; (7) any reduction in the stock value should occur when petitioner terminated his employment with Avalon/Applause or when he actually disposed of the stock; and (8) Avalon/Applause was a non-publicly-held company. *24 On September 24, 1992, respondent issued a notice of deficiency to petitioners for 1988. The notice of deficiency disallowed the $ 110,000 and $ 57,291 discounts in their entirety, determining a $ 30,800 deficiency, as well as additions to tax under sections 6653(a)(1) and 6661. Judicial Proceedings
Petitioners filed their petition on December 14, 1992. In the petition, petitioners state that the Form W-2 issued by Avalon/Applause "significantly overvalued the stock" petitioner received. They maintain that the stock petitioner received was worth $ 70,500 (the $ 237,791 stated on the Form W-2, discounted by a total of 70 percent). In the answer filed on February 10, 1993, respondent denies for lack of sufficient information the value and discount positions advanced by petitioners. On March 10, 1993, petitioners' counsel contacted respondent's counsel to inquire about how the parties should begin discussing the merits of the case. The parties conducted a telephone conference on April 7, 1993. At that time, respondent advised petitioners' counsel that it was petitioners' burden to produce the pertinent information. In this regard, respondent's counsel pointed out that *25 the prospectus relied upon by petitioners with respect to Avalon's acquisition of Applause was only a draft of what was purportedly filed with the Securities and Exchange Commission (SEC). On October 8, 1993, respondent's counsel sent a lengthy analysis of the Government's position to petitioners' counsel. The letter requested that petitioners provide additional information regarding the Avalon/Applause stock, the fair market value of Avalon/Applause in 1988, and petitioners' ability to sell the stock. In addition, respondent's letter stated that although petitioner "is entitled to a minority stock discount, the question is exactly how much of a discount he is entitled to". Based on these considerations, respondent's letter offered to settle the case by allowing a 10-percent minority discount on the stock (with a fair market value of $ 237,791, as reported by Avalon/Applause). On November 1, 1993, petitioners' counsel refused the settlement offer. By letter dated January 14, 1994, petitioners' counsel requested that the Government reconsider its position. By letter dated February 14, 1994, respondent's counsel responded by stating that the Government's position was reasonable. *26 Respondent received a copy of petitioners' expert report on February 14, 1994. Two days later, respondent's counsel mailed a copy of the report to Appeals Officer Fenton for his consideration and review. Respondent's counsel also mailed a copy of the report to the Internal Revenue Service (IRS) Engineering Division (the Government's in-house appraiser) for analysis. On February 24, 1994, the IRS Engineering Division advised respondent's counsel that it had reviewed and analyzed petitioners' expert witness report. The Engineering Division concluded that a 30 to 40-percent minority discount would be appropriate if all of the factual information in the report was accurate. On the same day, the case was transferred back to Fenton for reconsideration. In order to determine the accuracy of the facts contained in the expert witness report, respondent served two subpoenas on Avalon/Applause on February 28, 1994. As a result of these subpoenas, on March 7, 1994, counsel for respondent learned that the financial information contained in the draft prospectus was indeed valid. Respondent also obtained the identity and location of two witnesses with personal knowledge of the stock value *27 determination. Based upon the information that was becoming available to respondent, counsel for respondent offered to settle the case with a 35-percent discount on March 7, 1994. The next day, petitioners' counsel counteroffered with 63-percent discount, and respondent's counsel then increased her offer to a 45-percent discount, with no additions to tax. On or about March 9, 1994, petitioners' counsel rejected the Government's settlement offer. Respondent proceeded to trial. On March 11, 1994, subpoenas were issued to two individuals with personal knowledge of Avalon/Applause stock value in 1988. One of these individuals was Harris Toibb, the chief executive officer of Applause, in 1988. Pursuant to the subpoena, on March 14, 1994 (the day before the trial in this case), Toibb advised counsel for respondent of the following: (1) Avalon/Applause used figures from the draft prospectus (which were also relied upon by petitioners) in computing the value of the stock issued to petitioner and reporting the value on the Form W-2; (2) a significant discount should apply to the stock issued by Avalon/Applause because there was no market for it; (3) the draft prospectus was the same *28 one that was eventually filed with the SEC; and (4) the financial information contained in the draft prospectus, including the valuation of the Avalon/Applause shares, was correct because such information was prepared by reputable accounting firms and there were constant negotiations between the interested parties with regard to what information would be included in the prospectus. At trial the following day (March 15, 1994), respondent's counsel conceded the case in light of all the information that was received in the previous 2 weeks. The concession allowed the original discount (46 percent) taken on petitioners' 1988 return, with no additions to tax. Petitioners accepted the 46-percent discount and no longer requested a 70-percent discount, as stated on their amended return. On March 30, 1994, petitioners filed a Motion for Legal Fees and Costs in the total amount of $ 12,306. On April 28, 1994, respondent filed an objection to this motion. On May 24, 1994, the Court held a hearing on petitioners' motion. OPINION A prevailing party may be awarded a judgment for reasonable litigation costs incurred in connection with a Court proceeding pursuant to section 7430, as amended *29 by the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, section 6239, 102 Stat. 3342, 3743-3746 (applicable to petitions filed after November 10, 1988). See also Rule 231. The petition in this case was filed on December 14, 1992. An individual taxpayer must meet seven requirements in order to be awarded reasonable litigation and administrative costs under section 7430. The taxpayer must: (1) Timely file a motion for litigation and administrative costs. Rule 231(a). Petitioners met this requirement. (2) Substantially prevail in the proceeding in this Court. Sec. 7430(c)(4)(A)(ii). Respondent concedes that petitioners met this requirement. (3) Not unreasonably protract the administrative proceeding or the proceeding in this Court. Sec. 7430(b)(4). Respondent concedes that petitioners met this requirement. (4) Establish that respondent's positions in the administrative proceeding and the proceeding in this Court were not substantially justified in law or in fact. Sec. 7430(c)(4)(A)(i), (7)(A) and (B); Pierce v. Underwood, 487 U.S. 552, 564-565 (1988); Huffman v. Commissioner, 978 F.2d 1139, 1143-1147 (9th Cir. 1992), *30 affg. in part, revg. in part on other grounds, and remanding T.C. Memo. 1991-144; Sliwa v. Commissioner, 839 F.2d 602, 606 (9th Cir. 1988), affg. an unreported opinion of this Court; Powers v. Commissioner, 100 T.C. 457, 470 (1993). As discussed below, we hold that petitioners did not meet this requirement. (5) Exhaust any administrative remedies available in the IRS. [6]Sec. 7430(b)(1). Respondent concedes that petitioners met this requirement. (6) Have a net worth that did not exceed $ 2 million at the time the petition was filed in the case. Sec. 7430(c)(4)(A)(iii); 28 U.S.C. sec. 2412(d)(2)(B) (1988). Respondent concedes that petitioners met this requirement. (7) Establish that the amount of costs claimed is reasonable. Sec. 7430(a), (c)(1) and (2). Because we have determined *31 that petitioners did not meet the fourth requirement, we do not have to determine whether this requirement is met. Petitioners must establish all of the above requirements before the Court may award litigation and administrative costs under section 7430. Minahan v. Commissioner, 88 T.C. 492, 497 (1987); Han v. Commissioner, T.C. Memo. 1993-386. Petitioners have the burden of proof with respect to each and every requirement. Rule 232(e); Welch v. Helvering, 290 U.S. 111, 115 (1933); Gantner v. Commissioner, 92 T.C. 192, 197 (1989), affd. 905 F.2d 241 (8th Cir. 1990). The "not substantially justified" standard under section 7430 is applied as of the separate dates that respondent took positions in the administrative proceeding and in the proceeding in this Court. Sec. 7430(c)(7)(A) and (B); Huffman v. Commissioner, supra; Han v. Commissioner, supra. For purposes of the administrative proceeding, respondent is considered to have taken a position on September 24, *32 1992, the date of the notice of deficiency. Sec. 7430(c)(7)(B). For purposes of the proceeding in this Court, respondent is considered to have taken a position on February 10, 1993, the date respondent filed the answer. See Huffman v. Commissioner, supra at 1148. The two positions taken by respondent are virtually identical; there is no evidence in the record that respondent's position changed from the time the notice of deficiency was issued until the answer was filed. Whether this position was substantially justified will determine whether petitioners are entitled to an award of reasonable attorney's fees and costs. In 1986, Congress changed the language describing the position of the United States from "unreasonable" to "not substantially justified", the standard applicable to the Equal Access to Justice Act (EAJA), 28 U.S.C. section 2412 (1988). Tax Reform Act of 1986, Pub. L. 99-514, sec. 1551, 100 Stat. 2752; H. Conf. Rept. 99-841, at II-801 (1986), 1986-3 C.B. (Vol. 4) 801. We have held that the substantially justified standard does not represent a departure from the reasonableness *33 standard. Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988), and cases cited therein; see also Pierce v. Underwood, supra at 563-565. "Substantially justified" means "justified to a degree that could satisfy a reasonable person", (1) as a matter of fact, and (2) as a matter of law. Pierce v. Underwood, supra at 565. That interpretation also applies to motions for litigation costs under section 7430. Comer Family Equity Pure Trust v. Commissioner, 958 F.2d 136, 139-140 (6th Cir. 1992), affg. per curiam T.C. Memo. 1990-316; Norgaard v. Commissioner, 939 F.2d 874, 881 (9th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-390. For a position to be substantially justified, there must be "substantial evidence" to support it. Pierce v. Underwood, supra at 564-565. In deciding whether the Commissioner's position was substantially justified, we will consider not only *34 the basis of the Commissioner's legal position, but also the manner in which the Commissioner maintained that position. Wasie v. Commissioner, 86 T.C. 962, 969 (1986). The issue we need to decide is whether petitioners have established that respondent's position regarding the value and discount of the shares in issue [7] was not substantially justified during the administrative or judicial proceedings. Respondent argues that her position in both the administrative and judicial proceedings was substantially justified. Petitioners disagree. *35 With regard to the administrative proceedings, Appeals Officer Fenton determined that the discounts that petitioners took on their 1988 Federal income tax return and amended return should be disallowed in full because: (1) Petitioners never challenged the value placed upon the stock before Avalon/Applause issued it; (2) although petitioners were contending that there was no market for the stock, they never attempted to sell it although the Agreement appeared to have given them an option to sell the stock to the other shareholders, or to sell the stock to outside persons if the shareholders did not exercise the right of first refusal; and (3) they never obtained any appraisal as to the value of the stock they were discounting. Respondent then issued a notice of deficiency to petitioners. We believe that the third of Fenton's reasons substantially justified his determination. In effect, petitioners put the burden of establishing the correct value and discount of the stock on respondent. Thus, respondent was forced to verify the stock value and discount because petitioners failed to provide such information. It is clear that the Commissioner is permitted to issue a notice of deficiency *36 and litigate an issue where the taxpayer has failed to substantiate an item. See, e.g., Schaeffer v. Commissioner, T.C. Memo. 1994-227; Espinoza v. Commissioner, T.C. Memo. 1988-298. In sum, we conclude that respondent's position in the administrative proceedings was substantially justified. Respondent's position in the judicial proceeding was also substantially justified. The lengthy October 8, 1993, letter written by respondent's counsel reasonably justifies both in law and in fact respondent's settlement offer. At that time, the value of the stock was still in issue, and petitioners had failed to demonstrate that no market existed for their stock. In this correspondence, respondent conceded that petitioners were entitled to a minority discount, but stated that she was not provided with sufficient information to determine how much the discount should be. Thus, a question remained regarding the amount of the minority stock discount. As the case proceeded, respondent was forced to gather information by subpoenaing two individuals with personal knowledge of the 1988 stock value. Later, after petitioners provided *37 respondent with their expert witness report (which occurred a month before trial), respondent asked the IRS Engineering Division to evaluate the expert report and ascertain its validity. After completing a comprehensive investigation, respondent agreed to the discount taken on petitioners' original 1988 return and conceded the additions to tax. The fact that the Commissioner eventually loses or concedes a case is not sufficient to establish that a position is not substantially justified. Sokol v. Commissioner, 92 T.C. 760, 767 (1989). To rule otherwise would "not only distort the truth but penalize and thereby discourage useful settlements." Pierce v. Underwood, supra at 568. The reasonableness of the Commissioner's position necessarily requires considering what the Commissioner knew at the time. Cf. Rutana v. Commissioner, 88 T.C. 1329, 1334 (1987); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). The taxpayer need not show bad faith to establish that the Commissioner's position was not substantially justified. Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); *38 Powers v. Commissioner, 100 T.C. 457, 470 (1993). Petitioners were required to prove their entitlement to the discounts that they relied upon when filing their 1988 return and amended return. In fact, they failed to submit evidence as to the value of the stock or the discounts taken until approximately 1 month before trial. They did not provide appraisals during the audit or appeals process to justify the large discounts. Nor did petitioners submit declarations from any witnesses during that time that indicated that it was difficult to market the stock. After checking the validity of the information, respondent expeditiously agreed to accept the discount taken on petitioners' original 1988 return. Thus, it is clear that, taking into account what respondent knew during the administrative and judicial proceedings, respondent acted reasonably. See, e.g., Harrison v. Commissioner, 854 F.2d 263 (7th Cir. 1988) (concession approximately 6 months after answer filed, after respondent had an opportunity to verify information, held reasonable), affg. T.C. Memo. 1987-52; Wickert v. Commissioner, 842 F.2d 1005 (8th Cir. 1988) *39 (concession 10 days after filing of answer, although it took several months to draft the stipulation of settlement, held to be reasonable), affg. T.C. Memo. 1986-277; Ashburn v. United States, 740 F.2d 843 (11th Cir. 1984) (11-month delay in conceding case not unreasonable because the issues were not simple); White v. United States, 740 F.2d 836, 842 (11th Cir. 1984) (Government's concession of issue 3 months after issue raised was reasonable). Respondent argues that this case is similar to Sliwa v. Commissioner, 839 F.2d 602 (9th Cir. 1988), affg. an unreported opinion of this Court, a case in the circuit where an appeal in this case would lie. In Sliwa, the Commissioner conceded the case as soon as all the pertinent information became available and was reviewed. The Court of Appeals found that the Commissioner's position in both the administrative and judicial proceedings was reasonable. "It is the burden of the taxpayer to prove that she is entitled to the benefit of any provision of the Internal Revenue Code." New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). *40 Similarly, in this case, petitioners failed to prove that they are entitled to the benefit of section 7430. Petitioners claim that they did not want to incur the expense of obtaining an appraisal. They also argue that they encouraged respondent to allow a discount based on other similar published cases. Respondent counters by contending that the other cases were decided on their own facts, and that petitioners did not provide in a timely fashion the specific facts respondent needed to allow any kind of discount. We agree with respondent. It was necessary for petitioners to provide an appraisal to substantiate the figures they used for the value of the stock and the minority discount. See New Colonial Ice Co. v. Helvering, supra.
In conclusion, we hold that respondent's position in this case was substantially justified, i.e., had a reasonable basis in both fact and law. Consequently, we will deny petitioners' Motion for Legal Fees and Costs under section 7430 and Rule 231. In view of our holding that respondent's position was substantially justified, we find it unnecessary to address the issue of whether the litigation costs are reasonable. *41 To reflect the foregoing, An appropriate order and decision will be entered. Footnotes
1. Petitioner Mary E. Morrow is involved in this case by virtue of filing a joint Federal income tax return with her husband, John F. Morrow. Unless otherwise specified, the term "petitioner" shall refer to John F. Morrow.↩
2. In essence, the Agreement provided that the Avalon/Applause shares could not be sold to outside persons without first having been offered to various Avalon/Applause shareholders, who had successive rights of first refusal.↩
3. Attached to petitioners' return was a statement which read: John Morrow was issued a W-2 by Avalon/Applause which included income in the nature of restricted non-public stock having an allocated value of $ 237,791.00 issued to him. (The value was determined by Avalon/Applause.) Taxpayer's 1988 return included a minority discount of $ 110,000 so that the net income reflected on the 1988 return was $ 127,791 with respect to such stock. The actual value of the stock was $ 70,500.00, which value was determined by subsequently received information, calculated as follows:
Sale price of Applause immediately prior to stock issuance: $ 116,000,000.00 Subordinated debentures issued by parent corporation at time of acquisition (leveraged buyout) ($ 92,500,000.00) Equity in corporation immediately after acquisition: $ 23,500,000.00 ↩
Equity
=
value per share
Issued and outstanding stock
$ 23,500,000.00
=
$ 11.75 per share
2,000,000.00   8,000 shares issued to
=
$ 94,000.00
Morrow X $ 11.75
$ 94,000.00 less 25%
(minority non-voting
=
$ 70,500.00
discount)
value of shares issued to Morrow The difference on
the return is:
Original value
$ 237,791.00
Less: Discount
$ 110,000.00
$ 127,921.00
[sic $ 127,791]
Actual value
$ 94,000.00
Less: Discount
$ 23,500.00
$ 70,500.00
Difference:
$ 57,291.00
4. Petitioners filed the aforementioned amended return while the case was pending in the Appeals Office.↩
5. Sec. 83 provides that if property is transferred to any person in connection with the performance of services, the service provider is required to include in income the fair market value of such property (less any amounts which were paid for such property) in the first taxable year in which such property becomes transferable or is not subject to a substantial risk of forfeiture, whichever comes first.↩
6. This requirement only applies to a judgment for an award of reasonable litigation costs. Sec. 7430(b)(1)↩.
7. Courts have long recognized that the shares of stock of a corporation that represent a minority interest are usually worth less than their proportionate share of the value of the corporate assets. Estate of Bright v. United States, 658 F.2d 999 (5th Cir. 1981) (en banc); Estate of Newhouse v. Commissioner, 94 T.C. 193, 249 (1990); Ward v. Commissioner, 87 T.C. 78, 106 (1986); Estate of Andrews v. Commissioner, 79 T.C. 938, 953 (1982); Estate of Hooper v. Commissioner, 41 B.T.A. 114, 129 (1940). A minority discount is recognized because the holder of a minority interest lacks control over corporate policy, cannot direct the payment of dividends, and cannot compel a liquidation of corporate assets. See Harwood v. Commissioner, 82 T.C. 239, 267 (1984), affd. without published opinion 786 F.2d 1174 (9th Cir. 1986); Estate of Andrews v. Commissioner, supra.
The appropriate discount percentage is a question of fact. Ward v. Commissioner, supra at 109. There are two types of discounts: (1) The discount for lack of control reflects a minority shareholder's inability to compel liquidation and inability to realize a pro rata share of the corporation's net asset value. Harwood v. Commissioner, supra; and (2) the lack of marketability discount reflects that there is no ready market for the non-publicly-traded stock. Estate of Andrews v. Commissioner, supra↩.